WILLIAM BEVAN et al., Appellants, v. CATHARINE COOPER et al., Executors, etc., Respondents.

The personal estate of a testator is the primary fund for the payment of general legacies; and it is the only fund, unless express direction or a clear intent otherwise is found in or may be gathered from the will in connection with the surrounding circumstances.

The will of C., after directing the payment of his debts out of his personal property, and after certain general bequests to strangers to his blood, and a specific devise of certain real estate, contained this residuary clause: "I give, devise and bequeath all the rest, residue and remainder of my estate, real and personal, to the executors of my will * * in trust * *

to rent the rest of my real estate, and to invest the rest of my personal estate, and keep the same invested in good securities." Then followed a specification of the trusts, which were for the benefit of the testator's widow and children. The clause contained the only provision for the latter and the principal provision for the former, and embraced the largest part of the testator's estate. The personal estate proved insufficient to pay the debts and general legacies, the inadequacy being revealed after the testator's death. *Held,* that the general legacies were not chargeable upon the residuary real estate.

Where an executor in good faith resists the charging of a legacy upon the residuary estate in his hands, and shows that there exists a real question of fact or law, a surrogate has no jurisdiction to decide the question upon settlement of the executor's accounts.

The provision of the act of 1870 relating to proceedings in the Surrogate's Court of the county of New York (§ 11, chap. 359, Laws of 1870), giving to the surrogate of that county, in any proceeding before him to *prove a will,* the same jurisdiction to determine its true construction or validity as is vested in the Supreme Court, applies only and is expressly restricted to proceedings to prove a will.

*Bevan* v. *Cooper* (7 Hun, 117), reversed on question of jurisdiction which was not presented below.

(Argued January 21, 1878; decided January 29, 1878.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a decree of the surrogate of the county of New York. (Reported below, 7 Hun, 117.)

The appeal was by legatees under the will of William Cooper, late of the city of New York, deceased, from so much of the decree of the said surrogate, upon the final accounting of the executors, as adjudged that the general legacies given by the will were not a charge upon the testator's real estate.

The material portions of the will are as follows:

"First. I order and direct the payment of all my just debts and funeral and testamentary expenses out of my personal estate, with all convenient dispatch after my decease.

"Second. I give and bequeath to my wife, Catharine Cooper, all the furniture, beds, bedding, and bedsteads, piano-forte, mirrors, cutlery, china, glass and earthenware contained in my dwelling-house at the time of my death, and

I give to her absolutely the sum of one thousand dollars, to be paid to her within thirty days after my decease.

" Third. I give and bequeath to my brother, John Cooper, all leasehold property, or chattels (real) owned or possessed by me at the time of my decease; also all capital stock of the People's Bank in this city owned by me, and I release him and his estate of and from all claims that I can or may have against him, and order and direct the executors of this my will to cancel and discharge all and every bond and mortgage I hold against him and his property, and to execute, acknowledge, and deliver the necessary or proper discharge thereof.

" Fourth. I give and bequeath to William Bevan, now residing at No. 101 Charles street, in the city of New York, the sum of five thousand dollars, and to his wife, Mary Ann Bevan, the like sum of five thousand dollars; and if either of them die before me, I give to the survivor ten thousand dollars.

" Fifth. I give and bequeath to Margaret E. Heaton, daughter of Joseph Beachum, the sum of ten thousand dollars.

" Sixth. I give and bequeath to Joseph Beachum, his heirs and assigns, all real and personal property owned by me at Tuscarora, in the county of Schuylkill, and State of Pennsylvania.

" Seventh. I give, devise, and bequeath all the rest and residue and remainder of my estate, real and personal, to the executors of my will hereinafter named, or to those of them as shall qualify as such, in trust, and for the following uses and purposes, viz. : To rent the rest of my real estate and to invest the rest of my personal estate, and keep the same invested in good securities, and from out of the rents, interest and income thereof—1st, to pay the expense of executing this trust, the taxes and assessments upon my property, and the expense of keeping my buildings insured and in repair ; and 2d. To pay or apply the remainder as follows : One-third thereof to my wife, Catharine Cooper, for and during her natural life, and the two-thirds thereof to

the use, support and education of my lawful children, or the survivor of them, until they respectively attain the age of twenty-one years ; and when they or the survivor of them attain that age, to assign, convey and transfer said last-named two-thirds to my said children, their heirs and assigns forever ; and upon this further trust, if my said wife should die before my said children shall each attain the age of twenty-one years, then to pay or apply her said one-third of said rents, income and interest to the use, support and education of my said children until they attain that age ; but if my said wife should survive the period when my said children shall each attain the age of twenty-one years, then, upon her death, to convey and transfer to my said children so much and that part of the principal of my estate reserved or set apart for her use or benefit ; and upon this further trust, if my said children should all die before attaining the age of twenty-one years, then to assign, transfer and convey two-thirds of said rest, residue and remainder of my real and personal estate to my brother, John Cooper, his heirs and assigns forever ; and in such case to assign, transfer and convey to him, his heirs and assigns, the other third thereof, upon the death of my said wife ; and if my said children should all die before their mother, without leaving any lawful issue, and subsequent to their or the survivor of them attaining the age of twenty-one years, then also to transfer, convey and assign to my said brother, John Cooper, the last-named third part of the rest and residue of my estate, in order to carry into effect this my will. I order and direct the executors of and trustees under the same to set apart the full equal one-third part of the rest and residue of my estate, upon my children attaining the age of twenty-one years, out of the income and interest whereof my said wife shall be paid her one-third as hereinbefore directed. I hereby expressly declare that the provision hereinbefore made for my wife is made and is to be accepted by her in lieu of dower and other claims or interest in my estate."

Further facts appear in the opinion.

*Wm. G. Choate*, for appellants.   Although the personal estate is the primary fund for the payment of legacies, yet they are chargeable upon the real estate where such an intention is expressed, or may be inferred from the language and dispositions of the will.   (*R. C. Ger. Ch.* v. *Wachter*, 42 Barb., 44; *Lupton* v. *Lupton*, 2 J. Ch., 624; 2 Perry on Trusts (2d ed.), § 570; *Goddard* v. *Pomeroy*, 36 Barb., 556; *Taylor* v. *Dodd*, 58 N. Y., 348.)   Where the residue of an estate, real and personal, is blended together in one fund, in terms purporting that the testator treated or contemplated it as one mass for the purpose of disposition, the legacies are thereby charged on the realty.   (*Aubrey* v. *Middleton*, 4 Vin. Abr., "Charge D.," Case 15; *Bench* v. *Biles*, 4 Madd., 187; *Francis* v. *Cremlow*, Kay, 435; *Wheeler* v. *Howell*, 3 K. & J., 198; *Greville* v. *Brown*, 7 H. of L. Cas., 689; *Gyett* v. *Williams*, 2 J. & H., 429; *Skiller* v. *Haisman*, 19 Wkly. Rep., 693; *Thorman* v. *Hillhouse*, 5 Jur. [N. S.], 563; *Hassanclaver* v. *Tucker*, 2 Binn., 525; *Witman* v. *Norton*, 6 id., 395; *McGlaughlin* v. *McGlaughlin*, 24 Penn. St., 22; *Adams* v. *Brackett*, 5 Met., 282; *Lewis* v. *Darling*, 16 How., 1; *Keeting* v. *Brown*, 5 Ves., 359; *Morehouse* v. *Scaife*, 2 My. & Cr., 703, 708, 709.)

*Will. Mann* and *Osborn E. Bright*, for respondents.   The general legacies not being expressly charged upon the real estate, could not under the will be made a charge upon it by implication.   (*Reynolds* v. *Reynolds*, 16 N. Y., 257; *Kinnier* v. *Rogers*, 42 id., 431; *Lupton* v. *Lupton*, 2 J. Ch., 623; *Keeting* v. *Brown*, 5 Ves., 359; *Wood* v. *Vandenburgh*, 6 Paige, 284; *Shulters* v. *Johnson*, 38 Barb., 80; *Myers* v. *Eddy*, 47 id., 263.)   The surrogate had no power or jurisdiction to decide as to a charge of the legacies on the real estate.   (3 R. S. [6th ed.], 332; id., 104, 111.)   The testator clearly intended to make the legacies to John Cooper specific to the extent declared in the decree.   (Redf. on Surr., 327; *Tift* v. *Porter*, 8 N. Y., 516; *Kirby* v. *Potter*, 4 Ves., 748; *Walton* v. *Walton*, 7 J. Ch., 258; *Ash-*

*burner* v. *McGuire*, 2 Bro., 108; *Rider* v. *Wager*, 2 P. Wms., 328; *Chaworth* v. *Beech*, 4 Ves., 555; *Juner* v. *Johnson*, id., 568; *Humphreys* v. *Humphreys*, 2 Cox, 184; *Freyer* v. *Morris*, 9 Ves., 360.)

FOLGER, J. This was an accounting of executors before the surrogate of New York county for a final settlement of their accounts. In that proceeding it was sought, by certain of the general legatees, to have their legacies adjudged a charge upon the residuum of the real estate of the testator devised by him in trust.

There are some rules which are well settled as to the payment or charging of general legacies. One is that the primary fund for the payment of them is the personal estate. It is one which is to be observed, unless express direction otherwise is found in the will, or there be a clear intent to the contrary to be gathered from the provisions of the will, which may be assisted by the extraneous circumstances of the case.

We will look at the provisions of the will, and the extraneous circumstances, if any, and gather what we can of the intent of the testator.

It is said that the mere fact of giving legacies by the testator furnishes a strong probability that he intended that they should be paid, if his estate, in any of its parts, was sufficient therefor.

It is hardly to be supposed that a man of sense, engaged in the solemn and deliberate matter of making a final disposition of his worldly estate, would trifle with the subject, by making bequests which he did not expect or intend should be satisfied; and if so, then, at first view, it seems plausible to say, that he must have meant that they should be satisfied from any portion of his estate, from the real if the personal does not suffice. But yet, this idea only imputes to the testator a general purpose that legacies given shall be paid. It does not satisfactorily show that, when giving them, it entered into his mind and formed a part of his intent that

they should be so charged upon his real estate, as that it should be subject to them as to a lien.  Still less, in such a case as this, when the devise and bequest of the rest and residue is not merely formal, to prevent fortuitous intestacy as to any part of his estate; but is a substantial vital gift to persons by nature the objects of his bounty, and does in fact dispose of the largest part of the estate.

There are cases in which, as in *Goddard* v. *Pomeroy* (36 Barb., 546), there is first in the will such a complete disposition of the personal estate, as that there is no possibility of the payment of an after-given legacy save from the real estate; so that the presumption of the testator's purpose to have payment made from some property, even the real estate left by him, becomes strong: for the prior complete disposition of the personalty, shows the knowledge of the testator at the very time of the putting his purpose on paper, that there will be nought but the realty to satisfy a later given legacy; and that with that knowledge, he should go on to give a legacy, and not intend it to be paid from the real estate, would be frivolity.  The distinction between that case and this is evident.  There, the inadequacy of the personalty was created by the will itself.  Here the inadequacy is revealed after the death of the testator, and is occasioned in some degree by debts presented to the executors. We are not able to enter with such accuracy into the notion possessed by the testator of the amount of his personal estate as to be able to say that with a certainty, or even probability of its inadequacy, present to his mind, he made these bequests. It is urged to us that the rule in England is, that where the real estate and the personal estate are by the residuary clause blended in one fund, in terms importing that the testator looked upon it as one mass for the purpose of disposition, the legacies are thereby charged upon the realty, and that sister States, and the Supreme Court of the United States, have established or approved of that rule.  We do not here undertake to question the soundness of the reasoning of the decisions cited in support of this contention.  We do not

think that they furnish the rule for us in this case. In the first place, the form and phraseology of the residuary clause in the will before us does not convey an intention so to blend the two estates of the testator. He separates the two kinds of property. The will speaks thus: "I give all the rest of my estate, real and personal, *to rent the rest of my real estate,* and to *invest the rest of my personal estate,* and keep the same *invested in good securities."* This indicates an anticipation of a residue of each kind of property, one of which will be managed by his executors in the mode appropriate to derive rents and profits from it, and the other in a mode appropriate to derive income and interest from it. And this same distinction of kinds of property, is kept up through the whole of the residuary article of the will, in the repeated use of the phrases assign, convey and transfer — one appropriate to a changing of title to real estate, and the others adapted to a disposition of personal property. This last is not a strong indication of intention, but it runs with that just noticed and enlarges its volume. Moreover, the residuary article of this will is not a formal matter merely. It expresses the chief purpose of the testator. It contains the only provision for his children and the principal provision for his widow. If it were merely a cautious, formal provision, to guard against the chance of intestacy, we could the more readily treat it as subservient to the wish of the testator, that the legacies given by him should, at all events, be paid. But where the largest part of a considerable estate is embraced in a residuary clause, and nowhere else, it is fair to infer that something more or other was meant, than to prevent intestacy, or to gather together the different parts of an estate into one mass for an indeterminate purpose. That such important use of the residuary clause is not frequent is a circumstance of some weight, and gives some evidence of the intent of the testator more to make an affirmative disposition of the property affected by it for the purpose named in it, than for the the purpose not named in it, of securing the payment of lega-

cies. (*Van Winkle* v. *Van Houten,* 2 Green (N. J.) Chy., 172.) It is of much moment, too, that the residuary clause provides for those who had a claim upon his forethought — his widow and his children — while the legacies sought to be charged are to strangers to his own blood, and having no claim upon him, unless it be that of faithful service, or the remote one of relationship to a first wife, and that of former domicile in his household. We should be slow to infer, that a testator meant to prefer legatees standing in such position to him and to his property, to his widow and his and her children. Courts have often struggled to find reason in a will for charging upon the real estate devised, a legacy to a child; and it is in the same line not to be too ready to make the estate devised to them, subject to a legacy to another not of the testator's kin.

Again, the language of the residuary clause of the will is satisfied by interpreting it *reddendo singula singulis*. It is a gift and devise of all the rest, residue and remainder of the testator's estate, real and personal. By the prior provisions of the will, he had given bequests of personal property ; so that there might be a rest of personal estate after those bequests were taken away. He had also made a prior devise of real estate ; so that there was a residue of real estate after that specifically devised was taken away. It is fair, then, to say that it is the rest of the real estate which he gives, after that specific devise of real estate, and that only, is taken out. We understand that no case in this State, has gone so far in inferring from the usual residuary clause an intent to charge legacies upon lands, as to find it where there has been a prior devise of specific real estate. In such case it has never been held by our courts that such devise did not give full effect to the phrases of the residuary clause, without forcing, or giving ground for, an inference that the legacies were in the mind of the testator, as being that subtraction from the real estate which was to leave a rest and residue of it. The cases cited on the argument, in which legacies have been charged upon the real estate, on the strength of the residuary clause, are

where the language of it was such (aided or not by other provisions of the will, and by extraneous circumstances, as the case might be), as that the court could well hold that there was a blending of the two kinds of property, the whole estate, into one mass, and that a gift of the residue so blended imported an intention that the legacies were to be paid first thereout. When there has been a prior specific devise of real estate, that interpretation has not been thought applicable.

There are other clauses in the will which militate with the inference urged upon us. Thus it is seen that the testator did not mean to charge his debts upon the real estate. He directs, in express terms, that they be paid from his personal estate. He is presumed to know that his debts must be paid, and that his real estate must be resorted to, if need be, for that object. But why so careful to charge his debts upon his personal estate, if there was a purpose to subject his real estate to the payment of legacies? There is also manifested the purpose of preferring some legacies, those to his widow and brother, to other legacies to those not of his blood. He directs that the legacy of $1,000 to his widow should be paid in thirty days after his decease. He makes the legacies to his brother specific. Thus he prefers these legatees. Can we infer that he would prefer them, and defer his children? It is not a natural inference. He is careful, too, to declare that the provision for his widow is in lieu of dower, and other claims or interest in his estate. It seems that when his mind was upon whatever would be likely to affect his real estate, he took care to express his intent beyond need of inference.

On the whole, then, we fail to find in this will, or any circumstances shown in the case, an intent to subject the rest and residue of the real estate, not specifically devised, to the payment of the general legacies. We decline, therefore, to go into the revision of the authorities in this State, and the decisions in other courts of this country and of England, to determine whether we ought to declare a rule not yet established in the judicature of New York.

This would lead to an affirmance of the judgment and decree appealed from, but for a consideration presented, and which, as we understand, was not brought to the attention of either of the learned courts below.

It is now claimed by the respondent that the surrogate had no jurisdiction to adjudge upon the question presented to him by the legatees. We think that the point is well taken, and that being brought to our notice we are bound to give it effect, though the party making it did not appeal from the decree. The Surrogate's Court is one of limited jurisdiction, having only what is given by the express terms of statutes (2 R. S., p. 220), and some powers incidental thereto. (*Sipperly* v. *Baucus, infra*.) There is no power, given in terms, to entertain such a question as this. If it should be implied from other powers that the surrogate might make a decree that legacies are charged upon real estate, it, when made, would be *brutum fulmen*. How is he to enforce it? He may not order lands to be sold for other purpose than for the payment of debts. (2 R. S., 102, §§ 1, 14; Laws of 1837, chap. 460, §§ 40, 72; Laws of 1874, chap. 267.) When by a will lands are ordered to be sold for the payment of debts or legacies, he has power to cite the executor to account, and to make distribution (2 R. S., 110, § 57), but not the power in the first instance to order the sale. He may enforce the payment of debts and legacies (2 R. S., p. 120, § 18, sub. 2; id., p. 92, § 52; p. 90, §§ 45, 48; p. 116, §§ 18, 19), but this must mean out of the personalty, else no need of the express provision for selling land to pay debts. There are other like provisions of statute, but we may not imply from them the power to decree on this subject.

A surrogate has no power to make a decree for the payment of a claim which is disputed, and the obligation of the representative to pay denied. (*Tucker* v. *Tucker*, 4 Keyes, 136.) It must first be established by the judgment of a court of common law, and the liability of the estate determined in that forum. (*Curtis* v. *Stilwell*, 32 Barb., 354, and cases cited there.) The question before us is one of equitable juris-

diction, and involving considerations and a range of judicial power in its determination beyond what was meant to be conferred upon a Surrogate's Court. If that court has not power to pass upon a disputed claim against the estate, surely it may not adjudge a question upon the construction of a will, may not determine that legacies are a charge upon the real estate devised, and fix thereby a lien upon the same in the hands of devisees or trustees. *In the Matter of Parker* (1 Barb. Chy., 154), a surrogate was asked to restrain an executor from contesting in a court of law the payment of notes given by his testator. The chancellor held that the surrogate had no jurisdiction so to do. Reliance was there put upon the provision of the Revised Statutes (2 R. S., 220, § 1, sub. 3), empowering surrogates " to direct and control the conduct of executors and administrators." But as the concluding clause of that section declared that all powers given by the section should be exercised in the cases and in the manner prescribed by the statutes of the State, it was held that the general language above quoted did not confer a power never before exercised by surrogates or Courts of Probate in this State; though, by the operation of the act of 1837 (chap. 460, § 71), the Surrogate's Court regains the incidental powers which it had before the Revised Statutes. (*Sipperly* v. *Baucus*, 24 N. Y., 46.) The same reason applies to the case before us. When in good faith an executor resists the charging of a legacy upon the residuary estate in his hands, and shows that there exists a real question of fact or of law in his refusal to allow it, the jurisdiction of the surrogate ceases, or has not attached. It is for the appropriate court of law or equity to adjudicate upon the matter. When determined there, the surrogate may go on with the accounting, or whatever other proceeding was before him when the question arose. In *Stilwell* v. *Carpenter* (59 N. Y., 414), we held that the general powers of a court of equity do not pertain to a Surrogate's Court, and for that reason decided that that court could not set off mutual judgments, a right to which relief is exercised upon

Opinion of the Court, per FOLGER, J.

equitable principles, and often depends upon complicated facts and equities. There is an intimation in *Harris* v. *Ely* (25 N. Y., 138–142), that a surrogate, on an accounting, may try the validity of a release, but the remark was *obiter;* and it there appears (*Kearny* v. *Jackson*, 1 Hagg., 105, there cited), that the Ecclesiastical Court in England had not that power. The act of 1870 (chap. 359, p. 829, § 11), does not affect the question before us adversely to these views. It is rather a legislative declaration that such jurisdiction does not exist without express conferment by statute. By that statute the same power and jurisdiction is given to the surrogate of New York, in any proceeding before him *to prove a will,* as is vested in the Supreme Court, to determine the true construction, validity and legal effect of the will. It is seen that the power thereby given is restricted to a proceeding to prove a will, and to that only.

We are brought to the conclusion, that though the courts below were correct in their view of the law that the legacies are not a charge upon the lands embraced in the residuary devise; yet that the surrogate could not entertain and pass upon the question; and for this reason, not presented to the attention of the courts below, the judgment and decree appealed from should be reversed; but, under the circumstances of the case, without costs to either party in this court.

All concur. CHURCH, Ch. J., and ALLEN, J., concur in result, without expressing any opinion as to the merits.

Judgment and so much of decree of surrogate as is appealed from reversed.