THOMAS H. SCOTT, APPELLANT, *v.* CHARLES STEBBINS AND OTHERS, EXECUTORS, ETC., RESPONDENTS.

27 335
8ap351

*Legacy — when it is charged upon the real estate of the testator — Statute of limitations — when an action may be brought within ten years.*

The defendant's testator died August 29, 1869, leaving a will, made on January second of that year, which contained, among others, the following provisions: "First. I give and bequeath to my son A. Hammond Hicks, in addition to any sum heretofore given him, the equal undivided half of my lands in Iowa, also my watch, seal and rings; and I do further give and bequeath to my said son the sum of five thousand dollars, payable one year after my decease. Second. I give and bequeath to my son, John F. Hicks, the remaining equal undivided one-half of my lands in the State of Iowa, and I do discharge him from all indebtedness to me for sums heretofore advanced; and I bequeath to my son, John Frank Hicks, the sum of two thousand dollars, to be paid to him by my executors when he shall arrive at the age of twenty-five years, with interest from the time of my decease, making the shares of my sons equal in my judgment." Then followed certain specific bequests, two legacies, one of $1,000 and one of $2,000; and then the following provisions: "Seventh. I give, grant, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, not herein effectually disposed of which I may own at the time of my decease, to Charles Stebbins, Jr., of Cazenovia, in trust for the following purposes, viz : 1st. To apply the interest thereof, or so much thereof as may be necessary, for the comfortable support of my father during his natural life. 2d. Upon and after the death of my said father out of the proceeds of said residuary estate to pay to the Oneida Conference Seminary, located at Cazenovia, the sum of fifteen thousand dollars, and to pay the balance of said residuary estate, with any unexpended income thereof, if any, to my said two sons, share and share alike; and I authorize and empower said Stebbins to sell and dispose of said property herein devised and bequeathed to him in trust at public or private sale, and upon such terms and conditions as he may think best for the purposes aforesaid." He then appointed Stebbins and two others executors.

In December, 1868, the testator inventoried his personal property at $22,500. At the time of his death his debts amounted to $6,775, while his personal property realized only $10,650.

*Held,* that the legacies to the sons were charged upon the real estate.

That until the accounts of the executors had been settled by the surrogate the executors were necessary parties to an action brought against the trustee to enforce the payment of any deficiencies in the legacies, and that as they could only be so joined with him in an equitable action, this action might be brought at any time within ten years from the time the cause of action accrued.

APPEAL from a judgment dismissing the complaint, entered on the decision of the court upon a trial at the Onondaga Special Term.

This action was brought against the executors of the will of Russell F. Hicks, deceased, and the trustee appointed by said will, to have a legacy of $5,000 given by said will to A. Hammond Hicks, the plaintiff's assignor, declared a lien on the lands devised by said will to said trustee, and paid out of the proceeds thereof. The testator died on the 29th of August, 1869, leaving a will written on the second of January preceding, which contained the following provisions material to the present case : " First. I give and bequeath to my son, A. Hammond Hicks, in addition to any sum heretofore given him, the equal undivided half of my lands in Iowa, also my watch, seal and rings; and I do further give and bequeath to my said son the sum of five thousand dollars, payable one year after my decease. Second. I give and bequeath to my son John F. Hicks the remaining equal undivided one-half of my lands in the State of Iowa, and I do discharge him from all indebtedness to me for sums heretofore advanced; and I bequeath to my son John Frank Hicks the sum of two thousand dollars, to be paid to him by my executors when he shall arrive at the age of twenty-five years, with interest from the time of my decease, making the shares of my sons equal in my judgment." Then follow certain specific bequests, a legacy of $1,000 to the testator's brother, James F. Hicks, and a legacy of $2,000 to the trustee of a certain school district in the towns of Clay and Cicero, Onondaga county, in trust for the purposes mentioned in the will. Next, as follows : " Seventh. I give, grant, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, not herein effectually disposed of, which I may own at the time of my decease, to Charles Stebbins, Jr., of Cazenovia, in trust for the following purposes, viz.: 1st. To apply the interest thereof, or so much thereof as may be necessary, to the comfortable support of my father during his natural life. 2d. Upon and after the death of my said father, out of the proceeds of said residuary estate, to pay to the Oneida Conference Seminary, located at Cazenovia, the sum of fifteen thousand dollars, and to pay the balance of said residuary estate, with any unexpended income thereof, if any, to my said two sons, share and

share alike. And I authorize and empower said Stebbins to sell and dispose of said property herein devised and bequeathed to him in trust at public or private sale, and upon such terms and conditions as he may think best for the purposes aforesaid. Eighth. I do hereby nominate and appoint Charles Stebbins, Jr., of Cazenovia, James J. Belden, of Syracuse, and Artemas Baum, of Clay, executors of this my last will and testament." This action was commenced on the 12th of August, 1879, more than six years after the cause of action originated or any payment was made thereon. The Special Term dismissed the complaint, holding that the legacy in question is not charged upon the real estate, and that the action is barred by the statute of limitations.

*Kennedy & Tracy*, for the appellant.

*Lansing & Lyman*, for the respondents.

SMITH, P. J.:

The cases of *Lupton* v. *Lupton* (2 Johns. Ch., 614), and *Myers* v. *Eddy* (47 Barb., 263), are relied upon by the defendants' counsel for the position that the legacy in question is not made a charge upon the real estate. Those cases hold that the usual formal clause of a will disposing of the residue of the estate, both real and personal, is not enough, of itself, to evince an intention in the testator to charge a general legacy upon the real estate. In the recent case of *Hoyt* v. *Hoyt* (85 N. Y. 142), the Court of Appeals referred to the doctrine of those cases without questioning its correctness, but they were evidently disposed to seek diligently in the expressions of the will and in outside circumstances aiding its interpretation, for evidence of a purpose on the part of the maker of the will to charge the real estate, especially as, in that case, the legacy was given to one of the testator's own blood, who had a claim "upon his forethought." Stress was laid by FOLGER, Ch. J., speaking for the whole court, upon the distinction "between a legacy to a stranger, which is a mere bounty, and a legacy that is the only provision for one of the blood of the testator who has a claim to recognition and provision." Here the legacy in question was to the testator's son, and we are called upon to determine whether it is not

legally perceptible from the face of the will, viewed in the light of extraneous circumstances, that the testator intended to make the payment of the legacies to his sons equally secure, at least, with that of the bequest to the seminary, which was a mere bounty, but which he charged, in effect, upon the residue of the real estate as well as of the personal property. We will refer briefly to the features of the case, which, we think, evince such intention.

*First.* By the terms of the will the residuary real and personal estate are blended in one mass. The trustee is authorized to sell the real estate, and its proceeds, with the personal property, are to constitute a fund which he is to apply as directed by the will. In this respect the case differs essentially from that of *Bevan* v. *Cooper* (72 N. Y., 317). It differs also from the cases of *Lupton* v. *Lupton* and *Myers* v. *Eddy* (*supra*), where the residuary clause was framed in words that indicated nothing more than that the testator did not intend to die intestate as to any portion of his estate. Here the residuary clause seems to indicate the testator's intention that, for all purposes of the trust, the real estate and personal property should be put upon the same footing and that the trustee should take simply what should remain of each after satisfying all prior gifts. That the term "residue" relates to what should remain after the payment of legacies is apparent from the fact that the will makes no provision for the payment of debts.

*Second.* The will directs that the trustee after satisfying the specific purposes of the trust shall pay the remainder of the fund to the two sons of the testator, to one of whom is given the legacy in question. It is hardly to be conceived that the testator contemplated that any part of the proceeds of the real estate should be distributed between his sons as a surplus until their legacies were paid in full. In other words, it is to be presumed that he intended that the real estate should be applied to the payment of their legacies, before there could be any remainder of the proceeds of the real estate to be divided between them. Otherwise their legacies are deferred to the gift to the seminary, whereas the presumption is, in the absence of convincing evidence to the contrary, that the testator intended to prefer his sons to a mere stranger.

*Third.* The legacies to the testator's two sons are fixed at such amounts, $5,000 to one and $2,000 to the other, as, with the specific

devises to them of real estate, would make their shares of the entire estate equal. This provision is significant read in connection with the subsequent direction that any surplus of the trust fund should be divided between them equally. It tends to show that by the gift to the trustee of the " residue " of the real and personal estate the testator intended only that which should remain of each kind after payment of legacies, for until the shares of the sons had been made equal by the payment of the legacies in full, it is not to be supposed that the testator intended that any surplus should exist or that it should be divided between them equally. An equal division of the surplus would have the effect to continue any inequality that might have resulted from a deficiency of the personal property to pay the legacies in full, thus defeating the expressly declared object of the testator to make the shares of his sons equal Had he intended that the legacies should be payable out of the personal estate only, and should be deferred to the bequest to the seminary, it is to be presumed that he would have directed the surplus to be distributed among them in such way as to apply ratably upon any deficiency in their respective legacies, and thus tend, as far as possible, to produce that equality between them which he specially designed.

*Fourth.* Reference has already been made to the fact that the bequest to the seminary was, in effect, charged upon the real estate. Is it to be presumed that the testator intended to be less provident for his sons? They were his only children, with the exception of a daughter from whom his affections had been alienated for several years. Such a presumption is not to be raised upon merely doubtful words. We are rather to found an intention to make all parts of the estate liable for the sons' legacies upon the presumption that the testator desired and purposed that the corporation which he was favoring should not take his estate to the exclusion of the natural objects of his testamentary bounty.

*Fifth.* These considerations find support in certain outside circumstances. The will was made in January, 1869, and the testator died in August following. In February, he bought of his son John land in Oswego county, at the price of $4,000, of which he paid $500, and the balance he owed at the time of his death. He built a house on his land in Onondaga county after making his will, the

cost of which is not shown. The fact that he thus reduced his personal property and added to his real estate, unexplained, tends to show that he regarded his real estate liable for the payment of the legacies provided for in the will. It may be suggested in answer to this, that in December, 1868, he inventoried his personal property at $22,500. If he had kept up his personal property to what it then was, and had left no considerable debts at his death, those facts, together with the estimate he then made, would have tended very forcibly to show that he relied upon his personal property to pay the legacies. But his action was the opposite of that. In January he had a balance to his credit in the Onondaga Savings Bank of over $8,500; and he reduced it before his death to a little over $300. And he left debts to the amount of $6,775, which have been paid by his executors. His estimate of the value of his personal estate was exaggerated, the executors having realized only about $10,650 from it, of which only about $2,033 was applicable to the payment of general legacies. But assuming that he thought the estimate made by him in December, 1868, was not excessive, he reduced his personal property so that at the time of his death it amounted to only about $7,500 over and above his debts, and the specific bequests in his will, other than those to be paid by the trustee, amounted to $10,000. Thus he must have known that his personal property could not pay debts and legacies, to say nothing of funeral expenses and expenses of administration. His action cannot be accounted for upon any other reasonable presumption than that he regarded his real estate as well as his personal property as pledged by his will for the payment of legacies.

A prior devise of specific real estate has sometimes been held to satisfy the residuary clause and to repel all implication of a purpose to charge the real estate. But the cases so holding have been those in which the residuary clause was in the usual form. The rule does not apply to a case where as here the residuary clause blends the two kinds of property into one mass; and a gift of the residue so blended imports an intention that the legacies are to be first paid thereout. (See opinion of FOLGER, J., in *Bevan* v. *Cooper, supra,* 325, 326.)

We do not overlook the fact that the question above discussed was adjudged adversely to the views above expressed by a learned

justice of this court at Special Term, in an action brought for the construction of this same will. The judgment in that case is not binding upon the parties here for reasons hereafter stated. No opinion was written, and with very high respect for the learning and ability of the distinguished judge who decided that case we are unable to concur in the conclusion which he reached. We are of the opinion that the legacy is a charge upon the real estate.

Is the action barred by the six years' statute of limitations? We think not. It seems clear that under the provisions of the will no action at law could be maintained against the executors to recover the legacy, except to the extent of the personal property received by them. They have no power of sale and no estate in the land; and the real estate being expressly devised to a third party with power of sale no trust is created in the executors to sell the land for the payment of legacies. If such trust is created, then, so far as the legacy is a charge upon the land, the only action maintainable against the executors would be an action in equity to enforce such trust. As the property devised to the trustee is not charged absolutely with the payment of the legacy, but only with so much of the same as the personal property shall fail to pay, no action at law for the payment of the legacy could be maintained against the trustee until after an accounting as to the personal property. (*Elwood* v. *Deifendorf*, 5 Barb., 398.) The complaint alleges, and the answer does not deny, that there has been no accounting or settlement by the executors. The executors are, therefore, necessary parties to an action against the trustee and they could only be joined with him in an action in equity. The case is one, therefore, in which there is no remedy at law and the six years' statute does not apply. As the action was brought within ten years it is not barred by the lapse of time.

The adjudication above referred to in the suit brought for the judicial construction of the will, is not a bar to this action, for the reason that the plaintiff here was not a party to that suit. Ferguson, who once owned the legacy, was made a party defendant in that suit, but prior to the commencement of the suit he had transferred the legacy to Duffany, who assigned it to the present plaintiff. The judgment, therefore, was not binding upon Duffany or his assignee, the plaintiff. (*Duffany* v. *Ferguson*, 66 N. Y., 482.)

The point is taken that the Oneida Conference Seminary and the father of Russell F. Hicks are necessary parties. No such defense is raised by the answer. But it is enough that the trustee is made a party. The legal title is in him, and he represents the interests of the *cestui que trusts*. As well might it be claimed that in an action against an administrator to recover a debt against the estate of his intestate, it is necessary to make the next of kin, or other distributees, parties.

It follows that the judgment should be reversed and a new trial ordered, costs to abide event.

HARDIN and HAIGHT, JJ., concurred.

So ordered.