WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.—May, 1888.

O'CONNOR *v.* GIFFORD.

*In the matter of the judicial settlement of the account of* WILLIAM P. O'CONNOR, *as executor of the will of* JOHN McEVOY, *deceased.*

Testator's will, after directing the payment of his debts and funeral expenses, gave $500 to his executors, to be expended by them in having masses said for the repose of his soul. The executor having paid out –one half of this amount for the purpose specified, and about $300 as funeral expenses, it was, upon the judicial settlement of his account, on a creditor's objection, that the amount paid for such expenses was " unauthorized in law, exorbitant and not justified,"—

*Held,* that the trust for masses was void in its creation, the expenditure for that purpose, unauthorized in law, and the sum paid therefor to be deemed assets in the executors' hands, with which he was chargeable.
Holland v. Alcock, 108 *N. Y.,* 312—followed.

A portion of decedent's assets consisted of two Jersey City bonds, of the par value of $1,000, each, which did not come into the executor's hands, but were taken by the residuary legatee, and sold, and the proceeds appropriated, by her. It appeared that the executor knew, during decedent's lifetime, and shortly before his death, of the ownership of the bonds, and was also aware, within a few months of the admission of the will to probate, of the existence of a liability on the part of decedent, for which the creditor afterward obtained judgment; also that the residuary legatee, who had the custody of decedent's effects, at the time of his death, repeatedly during six months denied having the bonds in her possession, sent the executor, in vain quests for them, to various persons and places, and finally confessed that she had sold them, stating that they had been given to her by decedent ; which last named statement the executor did not believe.—

*Held,* that, in view of the indebtedness of the estate, the latter was guilty of neglect of a plain and urgent executorial duty in not taking prompt measures to recover the value of the property wrongfully converted; and that, by reason of his *devastavit,* he must be held liable for the amount of the bonds in question, as assets in his hands.

THE testator, after directing the payment of his

debts and funeral expenses, gave, by his will, five hundred dollars to his executors, to be expended by them in having masses said for the repose of his soul; three hundred dollars to his brother, Michael McEvoy; and devised and bequeathed the residue of his estate to his niece, Mary Ann Murphy. He gave his executors, William P. O'Connor and the Rev. Matthew Dowling, or the survivor of them, power to sell his real estate, of which he had two parcels at White Plains.

The testator died about April, 1883, and his will was admitted to probate in July, following. On November 30th, of the same year, Mary Ann Murphy conveyed said real estate to John A. Walsh, for the expressed consideration of $1,500. By the account of proceedings filed by said O'Connor June 1st, 1885, he stated the amount of the personal estate which came to his hand (the other executor named, not acting), at $1,444.32. This sum did not include two bonds of Jersey City, which were spoken of in Schedule G. of said account, as follows: " There were two bonds of Jersey City, of the par value of $1,000 each, belonging to the deceased, which did not come into my hands. They were taken by the residuary legatee, Mary Ann Murphy, without my knowledge or consent, and sold by her. They were worth about $2,060, and I respectfully insist that I am entitled to commissions on said amount, as though said bonds, or the proceeds thereof, had come into my hands." About the time of the filing of said account, Silas D. Gifford, as receiver, etc., of John M. Masterson, commenced by action the foreclosure of a mortgage, the payment of

O'CONNOR V. GIFFORD.

which had been guaranteed by the testator, in which action said executor was made a defendant, and which resulted in a deficiency judgment against the executor, to the amount of $6,679.14, which said Gifford now held, in the character of assignee of said Masterson. The account showed that the executor expended the $500 for masses. Other facts are sufficiently referred to in the opinion.

T. G. BARRY, *for executor.*

R. E. PRIME, *for Gifford, creditor.*

THE SURROGATE.—In the recently decided case of Holland v. Alcock (108 *N. Y.*, 312), the Court of Appeals held that, where the testator gave the residue of his estate, amounting to about $10,000, to his executors "for the purpose of having prayers offered in a Roman Catholic church, to be by them selected, for the repose of my soul, and the souls of my family, and also the souls of all others who may be in purgatory," the trust attempted to be created was void, because there was no beneficiary in existence or to come into existence, who was interested in or could demand an execution of the trust, and no defined or ascertainable living person had, or ever could have, any temporal interest in its performance. For the same reason, the trust attempted to be created by the will in this case is void.

The contestants' counsel did not base any objection upon this specific ground; but, seeming to class the $500, attempted to be devoted to the saying of masses, with the charges for burial amounting to

about $300, as funeral expenses, he objected that the sum of $800, paid for such expenses was "unauthorized in law, exorbitant and not justified." Still, the objection may be regarded as broad enough to cover the question relating to the validity of the trust, which was void in its creation, and which has been executed in good faith. According to the case above cited, the expenditure for masses was "unauthorized in law." The case of Holland v. Alcock related to the will of Thomas Gunning. Smyth, the sole acting executor under that will, had an accounting before the Surrogate of New York, in which proceeding the validity of the trust for masses was recognized, without objection, and the propriety of the expenditure therefor was not questioned. No appeal was taken, and the Surrogate's decree in the matter was declared by the Supreme Court, in an action brought by the legatees to recover the sum paid for masses, to be binding and conclusive as to the correctness of the expenditure. But, in this case, there has been no adjudication of the question by any court, and it must be held, in accordance with the decision of the Court of Appeals, that the trust is void; and it follows, as a necessary sequence, that the payments made thereunder were unauthorized, and that the executor is chargeable therewith.

The executor credits himself with the full sum of $500, paid for masses for the repose of the soul of the deceased, when his testimony shows that he so expended $250 only, the other $250 having been contributed by Mary Ann Murphy, and with which he charges himself. Of course, he cannot be credited

with the amount he paid, and should not be charged with the amount contributed.

A more serious question, in so far as the amount involved is concerned, arises as to the liability of the executor for the sum of the two Jersey City bonds, valued together at $2,060. It seems to be well established that such acts of negligence or careless administration as defeat the rights of creditors or legatees, or parties entitled to distribution, amount to a *devastavit*, for if persons accept the trust of executors, they must perform it; they must use due diligence, and not suffer the estate to be injured by their neglect (Wms. on Ex'rs., 1636; Lawson v. Copeland, 2 *Bro. Ch. Cas.*, 156).

The facts, as disclosed by the testimony, are these. The executor knew, within a few months after the time of the admission of the will to probate, of the existence of the decedent's liability, for which the creditor subsequently obtained his judgment. He also knew, during the lifetime of the decedent and shortly before his death, that he was the owner of the Jersey City bonds. When he sought, after he became executor, on several occasions, to obtain possession of them, Mary Ann Murphy, who had the custody of the papers and effects of the deceased when he died, repeatedly, during six months, denied that she had them. She sent him to various persons and places, in a vain quest for them, and several times went to him and inquired if he had found those bonds yet; and finally, at the end of the six months, confessed to him that she had them all the time, and had recently sold them, claiming then that they been given to her by

the deceased. This the executor did not believe, for when he filed his verified account in this proceeding, he stated in it that these bonds belonged to the deceased, and insisted that he was entitled to his commissions on the amount of them. She had, therefore, at that time, in her hands, the proceeds of the real estate sold by her and also the proceeds of the sales of the bonds, together amounting to about $3,500. This the executor then knew, and he also then knew of the claim of this creditor ; yet he utterly neglected a very plain and urgent executorial duty in not taking prompt measures for the recovery of the value of the property wrongfully converted by Miss Murphy. Perhaps the reason why he did not do it, was a belief, based upon the advice of counsel, that the creditor would fail to obtain the judgment which he afterwards did. As between her, as residuary legatee and devisee, and himself as executor, had she been the only person interested in the estate, he might have been justified in tolerating her misconduct, but as between him and a claimant against the deceased, his negligence is gross and without excuse.

It is unnecessary to consider here the validity of the conveyance to the Rev. Mr. Walsh, as, assuming it to be void, this court has no incidental power, in this proceeding, to order a sale of the real estate for the payment of the creditor's claims (Bevan v. Cooper, 72 N. Y., 317).

It is objected, by the executor's counsel, that the creditor cannot recover here, because he did not present his claim under the published notice to creditors to do so. Conceding that there was no such formal

presentation of the claim, in this instance, as the statute contemplates, its only effect would be to limit his recovery in any *action* he might bring on it, to the amount of the assets remaining in the executor's hands unadministered at the commencement of the action, and to deprive him of the right to costs. The objection cannot avail in a proceeding like this. But the effect of this decision is to find, virtually, in the hands of the executor, one half the trust fund for masses, and the amount of the bonds in question.

A decree will be entered in accordance with the views above expressed.