## *In re* McEvoy's Estate.

### (*Surrogate's Court, Westchester County.*   May, 1888.)

1. CHARITIES—SUPERSTITIOUS USES—VALIDITY OF BEQUEST.
    A bequest to the executor of a sum to be expended in having masses said for the repose of testator's soul is void.[1]  Following *Holland* v. *Alcock*, 108 N. Y. 312, 16 N. E. Rep. 305.

2. SAME—OBJECTIONS TO VALIDITY—HOW RAISED.
    On accounting by the executor, the contestant having classed $500, attempted to be devoted to the saying of masses, with the charges for burial, amounting to $300, his objection that the expenditure of the $800 is "unauthorized' in law, exorbitant, and not justified;" is sufficient to raise the question of the invalidity of the bequest for masses.

3. EXECUTORS AND ADMINISTRATORS—ACCOUNTING—FAILURE OF CREDITOR TO PRESENT CLAIM.
    The objection that a creditor did not present his claim, under notice to creditors to do so, is not available, on accounting by the executor, on which a balance is found in his possession.

4. SAME—PAYMENTS BY THIRD PERSONS.
    One-half the amount directed by the will to De paid for a particular purpose hav-ing been contributed by a third person, it is improper for the executor to credit himself with the full amount paid, and charge himself with the half contributed.

5. SAME—SALE OF REALTY FOR DEBTS—POWERS OF SURROGATE.
    On accounting by an executor, the surrogate has no incidental power of ordering a sale of realty for payment of debts, and therefore will not consider the question of the alleged invalidity of a conveyance by the residuary legatee.

6. SAME—CONVERSION BY LEGATEE—KNOWLEDGE OF EXECUTOR—LIABILITY TO CRED-ITORS.
    An executor who knows of a conversion of the property of the estate by the residu-ary legatee, and of a claim against the estate upon which judgment is afterwards recovered, but makes no attempt to recover the value of the property so converted, is liable for such value to the claimant, though he had the belief, based upon advice of counsel, that no such judgment would be recovered.

On accounting by William P. O'Connor, executor of John McEvoy, de-ceased.   The will bequeathed to the executors $500, to be expended in having masses said for the repose of testator's soul.   Mary Ann Murphy was residu-ary legatee.   The other executor named in the will did not act.   The real es-tate, which the executors were empowered to sell, was conveyed by Mary A. Murphy to John A. Walsh, Silas D. Gifford, as receiver, etc., of John M. Masterson, sued for the foreclosure of a mortgage guarantied by testator, and made the executor defendant.   The suit resulted in a deficiency judgment

---

[1]See, to the same effect, In re Schwartz's Will, ante, 134.  See, also, note, Id.

against the executor for $6,679.14. The account stated the amount coming to the executor's hands to be $1,444.32, which did not include two Jersey City bonds for $1,000 each, and showed that $500 were expended for masses. For opinion on appeal see *post*, ——.

*T. G. Barry*, for the executor.   *R. E. Prime*, for Gifford.

COFFIN, S. In the recently decided case of *Holland* v. *Alcock*, 108 N. Y. 312, 16 N. E. Rep. 305, the court of appeals held that, where the testator gave the residue of his estate, amounting to about $10,000, to his executors "for the purpose of having prayers offered in a Roman Catholic Church, to be by them selected, for the repose of my soul, and the souls of my family, and also the souls of all others who may be in purgatory," the trust attempted to be created was void, because there was no beneficiary in existence, or to come into existence, who was interested in or could demand an execution of the trust, and no defined or ascertainable living person had, or ever could have, any temporal interest in its performance. For the same reason the trust attempted to be created by the will in this case is void. The contestant's counsel did not base any objection upon this specific ground, but, seeming to class the, $500, attempted to be devoted to the saying of masses, with the charges for burial, amounting to about $300, as funeral expenses, he objected that the sum of $800, paid for such expenses, was "unauthorized in law, exorbitant, and not justified." Still, the objection may be regarded as broad enough to cover the question relating to the validity of the trust, which was void in its creation, and which has been executed in good faith. According to the case above cited, the expenditure for masses was "unauthorized in law." The case of *Holland* v. *Alcock* related to the will of Thomas Gunning. Smyth, the sole acting executor under that will, had an accounting before the surrogate of New York, in which proceeding the validity of the trust for masses was recognized, without objection, and the propriety of the expenditure therefor was not questioned. No appeal was taken, and the surrogate's decree in the matter was declared by the supreme court, in an action brought by the legatees to recover the sum paid for masses, to be binding and conclusive as to the correctness of the expenditure. But, in this case, there has been no adjudication of the question by any court, and it must be held, in accordance with the decision of the court of appeals, that the trust is void; and it follows, as a necessary sequence, that the payments made thereunder were unauthorized, and that the executor is chargeable therewith.

The executor credits himself with the full sum of $500, paid for masses for the repose of the soul of the deceased, when his testimony shows that he so expended $250 only, the other $250 having been contributed by Mary Ann Murphy, and with which he charges himself. Of course, he cannot be credited with the amount he paid, and should not be charged with the amount contributed.

A more serious question, in so far as the amount involved is concerned, arises as to the liability of the executor for the sum of the two Jersey City bonds, valued together at $2,060. It seems to be well established that such acts of negligence or careless administration as defeat the rights of creditors or legatees, or parties entitled to distribution, amount to a *devastavit*, for, if persons accept the trust of executors, they must perform it; they must use due diligence, and not suffer the estate to be injured by their neglect. 2 Williams, Ex'rs, 1636; *Lawson* v. *Copeland*, 2 Brown, Ch. 156.

The facts, as disclosed by the testimony, are these: The executor knew, within a few months after the time of the admission of the will to probate, of the existence of the decedent's liability, for which the creditor subsequently obtained his judgment. He also knew, during the life-time of the decedent, and shortly before his death, that he was the owner of the Jersey City bonds. When he sought, after he became executor, on several occasions, to obtain

possession of them, Mary Ann Murphy, who had the custody of the papers and effects of the deceased when he died, repeatedly, during six months, denied that she had them. She sent him to various persons and places, in a vain quest for them, and several times went to him, and inquired if he had found those bonds yet; and finally, at the end of the six months, confessed to him that she had them all the time, and had recently sold them, claiming then that they had been given to her by the deceased. This the executor did not believe, for, when he filed his verified account in this proceeding, he stated in it that these bonds belonged to the deceased, and insisted that he was entitled to his commissions on the amount of them. She had, therefore, at that time, in her hands, the proceeds of the real estate sold by her, and also the proceeds of the sales of the bonds, together amounting to about $3,500. This the executor then knew, and he also then knew of the claim of this creditor; yet he utterly neglected a very plain and urgent executorial duty in not taking prompt measures for the recovery of the value of the property wrongfully converted by Miss Murphy. Perhaps the reason why he did not do it was a belief, based upon the advice of counsel, that the creditor would fail to obtain the judgment which he afterwards did. As between her, as residuary legatee and devisee, and himself as executor, had she been the only person interested in the estate, he might have been justified in tolerating her misconduct, but, as between him and a claimant against the deceased, his negligence is gross and without excuse. It is unnecessary to consider here the validity of the conveyance to the Rev. Mr. Walsh, as, assuming it to be void, this court has no incidental power, in this proceeding, to order a sale of the real estate for the payment of the creditor's claims. *Bevan* v. *Cooper*, 72 N. Y. 317.

It is objected, by the executor's counsel, that the creditor cannot recover here, because he did not present his claim under the published notice to creditors to do so. Conceding that there was no such formal presentation of the claim, in this instance, as the statute contemplates, its only effect would be to limit his recovery in any action he might bring on it, to the amount of the assets remaining in the executor's hands unadministered at the commencement of the action, and to deprive him of the right to costs. The objection cannot avail in a proceeding like this. But the effect of this decision is to find, virtually, in the hands of the executor, one-half the trust fund for masses, and the amount of the bonds in question. A decree will be entered in accordance with the views above expressed.