(35 Misc. Rep. 459.)

### WELLBROOK v. OTTEN et al.

(Supreme Court, Special Term, New York County. July, 1901.)

WILL—CONSTRUCTION—LEGACIES—CHARGE ON REALTY.

> Testator, leaving a wife, but no children, gave certain money to his brother and next of kin and to his adopted daughter,—the legacies to be paid after the death of his wife,—and bequeathed to his wife all the rest of his property, except a cemetery lot, which he gave to such daughter. Six years thereafter he executed a codicil reaffirming his will, and providing that the income of the money legacies should go to his wife during her life. He made no change in his real-estate investments between the time of executing his will and his death. His personalty was insufficient to pay more than two-fifths of the legacies to his brother and to his adopted daughter. Held, on a contest between the legatees of the testator and the devisees of the wife after her death, that the deficiency in the money legacies was a charge on the realty.

Action by Leonora H. Wellbrook against Henry D. Otten and others to construe a will. Judgment rendered.

Sidney J. Cowen, for plaintiff.

Bliss & Schley, for defendants.

Edward J. McGanney, for defendants George Hulseberg and wife.

Henry C. Hunter, guardian ad litem for Frederick Howard, Henrietta Wellbrook, and Adolph Van Kaas.

Benjamin E. Hall, for defendant Robert Deickman.

W. C. Percy, guardian ad litem for Wilhelmina Deickman.

RUSSELL, J. The payment of the legacies of $15,000 and $8,000 to the plaintiff and John Hulseberg is resisted by the relatives of the deceased wife of the testator, Conrad Hulseberg, except so far as the personalty paid about two-fifths of each. For full payment a resort to the realty becomes necessary. The extrinsic circumstances furnish the evidence that these legacies are largely ineffective unless the intention of the testator was to charge them upon the realty. The court must therefore be guided in the construction of the will by its intrinsic expression and extrinsic application. The first two disposing clauses of the will are as follows:

"First. After my lawful debts are paid, I give, devise, and bequeath to my beloved brother, now residing in Germany, the full sum of eight thousand dollars, to be paid to him after the decease of my beloved wife, Maria Hulseberg. I also give, devise, and bequeath to my beloved adopted daughter, Lena Henrietta Wellbrook, wife of John H. Wellbrook, the full sum of

fifteen thousand dollars, to be paid to her after the decease of my beloved wife, Maria Hulseberg."

Then, after giving a cemetery lot to the plaintiff, the testator gave, devised, and bequeathed to his wife, Maria, all the rest, residue, and remainder of his property, real, personal, or mixed, and appointed her executrix. The will was executed May 4, 1888, 6 years before the testator's death. On the 28th of August, 1894, 25 days before he died, he executed a codicil "reaffirming my last will and testament, bearing date the fourth day of May, 1888," by which he declared that the net income of the sums given to Hulseberg and the plaintiff should go to and be used by his wife during her natural life. It will therefore be observed that, within the limits fixed by him, the testator clearly intended to give to John Hulseberg and the plaintiff the full sums named, without abatement or impairment from any cause whatever; that his wife should enjoy the income of these sums, as well as the rest of the property, during her life, so that her interests did not conflict with the payment of the legacies named, unless she should be in such want as to require absorption of part of the realty,—a contingency evidently not contemplated by the testator; and he gives the title to the rest of his property, specifically naming his realty, to his wife absolutely. The testator therefore expressly declared that his wife should only take his real and personal property after the $23,000 of legacies were carved out, as there was nothing else to which the term "rest, residue, and remainder" could apply, except the trifling devise of the cemetery lot. To give to the relatives of the wife now, through her testamentary disposition, the realty left by the testator, would adjudge that the testator did not intend that the wife should take the rest, residue, and remainder after the payment of the legacies, but that such residue should be enhanced by the amount of the deficiency between the sum total of the legacies and the net amount of his personal property after payment of debts, taxes, and expenses of administration. If the testator had so intended, he would plainly have said that he devised his realty to his wife, and any balance of his personalty remaining after payment of the legacies.

The extrinsic application of the facts which discloses the failure of the personalty to provide sufficient means for the payment of the legacies also discloses strong confirmatory presumptions that the testator meant to provide for full payment of the legacies. The testator in dictating his will necessarily acted upon his own consciousness and perception of the situation as it existed. He was an old man, retired from business, and an invalid from about the time the will was made. His union with Mrs. Hulseberg had proved childless, and neither had any descendants. He had taken the plaintiff when but a few months old, and reared her as he would a daughter, both he and his wife giving her the appellation of adopted daughter. She stood to both of them as a child, and had no other home than theirs, until she was married. Apart from his wife, there was no one so close to him in the tender ties of daily companionship and deliberately assumed fathership. He took no steps to legally adopt the plaintiff, doubtless knowing that he meant to

provide for her by testament. There seems to have been no interruption in his loving regard for the plaintiff. The other legatee was his only brother and next of kin. Presumptively, he knew that his widow would be left with a larger fortune than that which he possessed. He died September 22, 1894; she, three years later, November 6, 1897. Her personalty inventoried $37,967.30, and her realty $15,000, over and above that which she received from him. No one appears to have been dependent upon her, and there is no evidence tending to show any substantial change in the amount of her means from the time of his death till her own, except as she received from his estate. All of the testator's realty was acquired 10 years or more before his own death, so that there was no change by him from personalty into realty after the making of his will. His personalty was inventoried by the widow, as executrix, as composed of two mortgages of the value of $11,030, and $96 of household furniture set aside for the widow, and the inventory was duly verified by her. The plaintiff also testifies that this was the extent of the personalty left by the deceased testator. This personalty was reduced by taxes and expenses of administration to $9,339.74, so that the adopted daughter received only $6,663.42, and the brother John $3,553.82. In the absence of any evidence to the contrary, it might fairly be inferred that no substantial change existed as to the amount of the testator's personalty from the date of his will until his death, but the codicil affords all the certainty required upon this subject. That codicil was made 25 days before he died, and in evident contemplation that death might soon come to this invalid. He reaffirms the provisions of the will, and emphasizes his wish that the widow should receive the income of all until her death. He thus readopts the provisions of the former will, as speaking from the date of the codicil, and in view of the then existing situation of his property, both personal and real. He was presumably aware that his personalty would pay only about two-fifths of the legacies which he thus reasserted he desired to be fully paid to the legatees after the death of his wife. It would be attributing to the testator a spirit of mockery to suppose that he meant to give these legatees only $9,000, when he solemnly declared that he wished them to receive the full sum of $23,000.

It is a just rule that, where a testator bequeaths legacies and devises his realty, the devisee should not suffer because of a misconception by the testator of the amount of his personalty, and that the legatees must be content with the amounts they actually receive, as though those bequests were of specific personal property. But there is no question here as to impaired benefits to the wife, who was the residuary devisee. He has distinctly asserted that he wished her to take such devise subject to the payment of the legacies in full, and has guarded against the effect of such wish by giving her the income not only of the realty, but of the personalty itself. He puts off the day when these legacies shall be paid until that wife shall no longer have need of anything in this life, and when all that she has must pass into hands alien to himself. He could not have desired that those alien relatives of hers should have their benefits, large as they

were, received through the wife, materially enhanced by the loss of his intended benefits to one who stood to him in the relation of a daughter, and to his only brother. These two were not strangers provided for by his bounty, but those whom he would naturally have benefited, and presumptively have left his estate to, had his wife deceased before himself. With the ample provisions for her expenditures, in her own property and what he gave her, she was so fully cared for that it would be injustice to suppose he ever intended that those close to him should suffer, not to help her, but to benefit her relatives. The extrinsic situation, therefore, both as to the condition of his property, his wife's property, and the claims of those properly and in fact the natural recipients of his bounty, which was present in the mind of the testator in making the will and the codicil, renders as certain as the evidence of circumstances can afford, the presumption that the testator meant that when his wife died this daughter and brother should receive the full benefits he had planned to give them.

The precedents in our courts during the past 15 years furnish reasonable uniformity of conclusion for the principle that the probable intent of the testator will determine in judging when legacies shall be paid out of the realty, or that the realty shall be used in aid of the deficiency left by the personalty. A power of sale may be a sufficient indication of the intent of the testator to charge the real estate. Kalbfleisch v. Kalbfleisch, 67 N. Y. 354. A residuary clause is not sufficient to justify the inference of such intent where the bequests are to strangers of the blood of the testator. Bevan v. Cooper, 72 N. Y. 317. A codicil to a will made six years after the original will, giving power of sale, carries the inference of intent to charge the realty with the payment of legacies where the proof showed that the personalty was sufficient at the time of the will to pay those legacies, but had become insufficient at the time of the codicil. Hoyt v. Hoyt, 85 N. Y. 142. A residuary clause, coupled with a power of sale and a change of the personalty into realty between the making of the will and death, affords the presumption that the testator intended to charge the real estate. Scott v. Stebbins, 91 N. Y. 605. Such an inadequacy of personalty as could not have been unforeseen by the testator, with a bequest and devise of "the rest of the property," creates a conclusive presumption that the real estate should be charged. McCorn v. McCorn, 100 N. Y. 511, 3 N. E. 480. Where the bequests amounted to $4,500, and the personalty at the time of the will did not exceed $1,500, and the personalty was subsequently depleted by the testator to the amount of $700 in the purchase of realty, the legacies were presumed to be charges upon the realty. Briggs v. Carroll, 117 N. Y. 288, 22 N. E. 1054. A will is to some degree ambulatory as to the persons and things with which it deals, but events occurring after its execution can be referred to only as they must have been in possible contemplation by the testator when he executed the will. Morris v. Sickly, 133 N. Y. 456, 31 N. E. 332. The charge upon the realty may be inferred, even though the personalty at the time of the will and of the death were far more than sufficient to pay the legacies, but the will had provided for a division of the personalty at

a period earlier than the termination of payments of the annuity legacy provided for. Dunham v. Deraismes, 165 N. Y. 65, 58 N. E. 789. Not one of the cases referred to, nor perhaps any case reported in the books, where the testator did not in absolute language charge the realty, presents facts which so clearly demonstrate to a moral certainty, from the will itself and the surrounding circumstances, as the case at bar, that the testator intended to devote enough of his property to the payment of legacies to persons for whom he had a tender regard. The defendants, claiming through the wife and as the recipients of her bounty, cannot repudiate her acts done with reference to the corpus of the property at a time when she was the executrix, and the sole owner of all which the plaintiff and the brother John did not take. Nor does the fact that she made a will two days later than the codicil of her husband, and saw fit to benefit the children of the plaintiff, militate at all against the presumption afforded by the testamentary acts of her husband.

Judgment is therefore directed charging the lands of which the testator died seised with the balance due and unpaid upon the legacies to the plaintiff and John Hulseberg, and for a sale of such real estate, with costs. Counsel and the guardians may submit their views as to the costs of the other parties.

Judgment accordingly.