CARLEY v. HARPER et al.

(Supreme Court, Appellate Division, Second Department. March 5, 1915.) ·

1. WILLS (§ 523*)—DESIGNATION OF DEVISEES—TENANTS IN COMMON OR CLASS.

General legacies to one and her children, designated by name, with directions that they "be divided among the four equally," with provision for substitution of descendants, were to the several persons as tenants in common, and not to them as a class.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1115; Dec. Dig. § 523.*]

2. WILLS (§ 578*)—PROPERTY DEVISED—AFTER-ACQUIRED PROPERTY.

Where testatrix lived in the family residence on parcels of land identified as A, B, D, and E, and also owned in entirety a separate lot, F, and at the time of making her will owned but one-half of lot D, her sister owning the other undivided one-half, which testatrix afterwards purchased from her sister's executors, a devise of all testatrix's "right, title, and interest in the premises" passed her after-acquired title to the devisee; her bequest of lot F being of "premises now owned by me," and the Decedent Estate Law (Consol. Laws, c. 13) § 14, providing that a person's will in express terms of all his real estate, or in any other terms denoting his intent to devise all his real property, shall be construed to pass all the real estate which he was entitled to devise at the time of his death.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1258–1265; Dec. Dig. § 578.*]

3. WILLS (§ 822*)—CONSTRUCTION—LEGACIES—CHARGE ON LAND NOT DEVISED.

In determining whether legacies were charged on land not specifically devised, the court would consider as in aid of the legatees the presence of a power of sale in the will, and a blending in the residuary clause of real and personal property, and the fact that the general legacies amounted to $132,000, while the personal property not specifically bequeathed amounted to $81,500.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 2120; Dec. Dig. § 822.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. **WILLS (§ 826\*)—CONSTRUCTION—EVIDENCE—INTENT.**
   Evidence *held* to show an intention of testatrix that general legacies should be a charge on land not specifically devised.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2128–2138; Dec. Dig. § 826.\*]

5. **WILLS (§ 826\*)—CONSTRUCTION—INTENT—EVIDENCE.**
   The burden was on legatees to prove an intention to charge the legacies on land not specifically devised.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2128–2138; Dec. Dig. § 826.\*]

6. **WILLS (§ 707\*)—ACTION TO CONSTRUE—COSTS—ADDITIONAL ALLOWANCE.**
   Under Code Civ. Proc. § 3253, providing for an additional allowance to parties in certain proceedings, the court had power to make an allowance to defendants in addition to costs in proceedings involving the construction of a will.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1684–1686; Dec. Dig. § 707.\*]

   Burr, J., dissenting in part.

Appeal from Special Term, Nassau County.

Action by Eldred A. Carley, as executor of Augusta M. Harper, deceased, against Elizabeth F. Harper and others. From the judgment, defendants Florence Skillin Cloyd and Simeon D. Skillin appeal. Modified and affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and RICH, JJ.

Algernon S. Norton and Percival H. Gregory, both of New York City, for appellants.

James W. Treadwell, of New York City, for respondents Elizabeth F. Harper, Millard, and Powers.

Augustus H. Skillin, of New York City, for respondents Skillin.

Daniel Whitford, of New York City, for respondents James and Lillie H. Harper.

George C. Lay, of New York City, for respondents Miller.

Edward L. Frost, of Brooklyn, for respondent Nassau County Trust Co.

THOMAS, J. Testatrix, a widow since 1896, made her will in 1900, and died in 1911, leaving personal property, exclusive of that specifically bequeathed, amounting to $81,553.63. The admitted debts are $2,660.59, and claims rejected amount to some $2,407.69. The expenses of administration are $10,557.74, including $9,000 transfer tax. The net balance is sufficient to pay slightly more than one-half of the general legacies, which are $132,200. There was real estate, an important part of which was devised specifically to her sister Julia, or her daughters, while the residue of real and personal property was given, one-half to her sister Julia and one-half to Sarah E. Skillin, a niece by marriage, and her children, to whom also was given the other one-half, if Julia did not survive the testatrix. The largest legacy is to Sarah E. Skillin and her three named children, and the

same persons took contingently under the ninth and tenth paragraphs of the will.

There are three questions: (1) Are the gifts to Sarah E. Skillin and her three children, in the eighth, ninth, and tenth clauses of the will, to the persons named as a class, or as tenants in common, which inquiry arises because Sarah and her daughter, S. Amelia Skillin, died before the testatrix? (2) Did the fifth paragraph carry to the devisees, not only lot F, on Washington street, which the testatrix then owned in its entirety, but also all the land used by testatrix as her residence, including lot D, at the corner of Washington and Prospect streets, of which at the time of the will she owned one-half, and her sister Julia the other undivided one-half, which the testatrix purchased of Julia's executors in 1903? (3) Were the general legacies charged on the land not specifically devised; that is, on the residuary?

[1] The gifts of general legacies to Sarah E. Skillin and her children, designated by name, with direction that they "be divided among the four equally," with provision for substitution of descendants, were clearly to the several persons as tenants in common, and not to them as a class, and the legacy to S. Amelia Skillin lapsed, while that to Sarah E. Skillin went to the surviving children under the substitutionary clause.

[2] Under the fifth paragraph, Julia A. Harper's daughters took the interest in 1903 acquired from Julia's executors. The excellent discussion in the briefs cannot be reproduced. But the plain condition was that the testatrix lived on parcels of land (identified as A, B, D, and E), whereby she continued a possession that had been in her family since 1816, when they were conveyed to her father, from whom they were transmitted to his wife, by her to his children, and later combined in all conveyances, save as the testatrix finally alienated E to the village of Hempstead. When the testatrix made her will, she was confronted with the situation that she could not venture to devise the property with an implication that she owned it, because in that case her sister would be obliged to decline the gift, or accept it as devising the whole of the parcels to herself, or, if she died, to her daughters; that is, she would be bound by the will if she took under it. Therefore the testatrix did all that she could properly do, viz., gave all "right, title, and interest in the premises."

The will indicates that it was drawn by a lawyer, whose duty it was to know that, in absence of contrary intention, a will speaks from the time of the death of the maker, and that paragraph fifth would carry all property, whenever acquired, that it showed intention to give. Whensoever property is acquired, the language of the gift must be comprehensive enough to cover it. The question is not primarily whether the testatrix owned the property when she made the will, but whether the language of the will would transfer it to Julia or her daughters if she did then own it, or later acquired it. All disability to the devise of after-acquired property was removed. Nevertheless the testatrix may or may not have wished to will it to Julia or her daughters. The statute (Decedent Estate Law, § 14) removes disability and aids construction. So that a person's will "in express

terms, of all his real estate, or in any other terms denoting his intent to devise all his real property, shall be construed to pass all the real estate, which he was entitled to devise, at the time of his death." If the will had been made the day the testatrix died, the words used in the present case would have carried all of her interest in the property. If she had owned the two halves of the property when she made her will, the words used would have covered her whole interest. The words of gift are unlimited, and, moreover, are deemed to have been spoken when the will took effect.

The appellants would construe the words as if they were merely descriptive. Their argument in effect is: She owned but one-half; she gave all to which she had title; therefore she devised one-half. To make that argument persuasive, the appellants must go farther, and show that the testatrix intended to speak as of the date of her will. She uses the words "now reside" to describe her residence; but her residence encompasses all the land used in connection with it. She speaks of the whole of the "premises now owned by me situated on Washington street," whereby, differing from the court below, I conclude that she referred to parcel F only. Those are descriptive words. But she gave all her title in her residence. By residence she means the land in its entirety appropriated for her residence, including parcel D. But she does not assert what the quality of her estate in it was, but as to the property on Washington street she was able to assert that she owned the whole of parcel F. But that does not show an intention to make her will speak as of the date of its execution.

The learned counsel for the appellants instance cases where the testator owned a fractional part and gave it, and then acquired the outstanding interest, and there was holding that the after-acquired interests did not pass. The interest given was construed to be limited. In other words, as I have tried to show, the words must be broad enough to carry the whole property, while in the cases cited the words limited the gift to a part of the property. It is written at the end of the fifth paragraph:

"It is my wish that the homestead in which I now reside at Hempstead, New York, may be retained by some member of my family as long as possible."

If appellants are right in their construction, one-half the residence would fall in the residuary. So, if Julia had lived, and there had been no purchase of her part, she would have had it all; but her interest was purchased. It is urged that after purchase it went into the residue, so that if Julia had lived she would have taken three-fourths and the Skillins one-fourth, and that, as she died, the Skillins would take one-half and own in common with Julia's daughters. So two families would be combined in the possession of the residence. It is difficult to believe that the testatrix so intended, although I do not wish to suggest that discovery of the testator's intention is to be aided by subsequent events. Instances may arise where the property in fact owned at the date of a will may be useful in identifying what was intended to be passed, and appellants instance such cases, but the mere fact that a person does not own the whole of the property does

not preclude it from passing, if later acquired, and the giving words are wide enough to take it in.

[3, 4] The legacies are charged on the land not specifically devised. The respondents are aided by the presence of a power of sale (Kalbfleisch v. Kalbfleisch, 67 N. Y. 354; Le Fevre v. Toole, 84 N. Y. 95; Hoyt v. Hoyt, 85 N. Y. 142), and the suggested blending of the real estate and personalty in the residuary clause may, under decisions, be considered (Scott v. Stebbins, 91 N. Y. 605, 613). The power of sale in the present instance is quite unnecessary, except to sell land not specifically devised for the payment of legacies. The testatrix knew full well that her land would not need to be sold for the purposes of her debts, and I conceive of no use for the power, except to provide funds for legacies from the sale of the land. And yet such an authority is so commonly a conventional part of a will that its influence may be inconsiderable. The same is true of the mention of real estate and personalty in the residuary clause. In my judgment, the value of that clause in the present case is slight. Its probative value is discussed in Briggs v. Carroll, 117 N. Y. 288, 292, 22 N. E. 1054.

If a testatrix gave residuary land and personalty to her legatees, it indicates that she thought when she made the will that, after her debts and legacies were paid, there would be personalty as well as land left. If it can be conceived that she thought of her land as converted into personalty, why would she mention land at all in the residuary clause? The real fact is that the residuary clause is the conventional receptacle for all remnants of property of which effective disposition is otherwise not made. Nor does it seem significant of a purpose to charge the land with legacies that the executors were directed to pay from the residue the transfer tax on all legacies. It might rather argue that the testatrix selected precisely what should be charged on the residue, and by such limitation excluded the charge of the legacies upon it. In short, if she knew that the tax would be some $9,000, and she charged that on the residue, there may be an implication that she did not intend to charge any other or farther sum on it.

But the most important consideration is whether the marked discrepancy between the general legacies, $132,200, and the available personal property to pay them when the will was made, leads to the conclusion that she intended the executors to sell so much of the land not specifically devised as should be required to meet the deficiency. (Briggs v. Carroll, 117 N. Y. 288, 292, 22 N. E. 1054; McManus v. McManus, 179 N. Y. 338, 344, 72 N. E. 235.) The question is fully discussed in the opinion of Clarke, J., in Ely v. Ely, 163 App. Div. 320, 148 N. Y. Supp. 691. Some of the land has been sold, and the question is whether the proceeds shall be paid to the general legatees or to the residuary legatees. The available evidence shows that the personalty at the date of the will applicable to the payment of general legacies was $97,589.77, while her real estate not specifically devised amounted to over $40,000.

It is urged that the finding omits the Britt mortgages. If so, it should be increased by $2,377.83. She reduced the amount by the

sum of $29,500 used in purchasing in 1903 her sister Julia's interest in the residence and property in the city of New York, mentioned in the fifth paragraph of the will. If that sum be added to the $81,553.63, the net sum of the personalty at her death first applicable to the payment of debts, legacies, and expenses of administration, the total would be $110,553.63. The debts, expenses of administration, and tax, as they actually existed at or after her death, would reduce it somewhat below $100,000. If the discrepancy found in 1900 between her applicable personalty and the general legacies actually existed, the finding that the legacies were charged is sustained.

[5] While the burden is upon the legatees to prove the intention to charge, it is noticeable that nothing is revealed to show a personal estate that the testatrix could have regarded as sufficient to pay the legacies. The documentary evidence proves that the items of personal property existing when the will was made have been found. It seems improbable that so large an amount as was wanting could have escaped mention or discovery. Documents found in her late residence are:

An account of cash receipts kept by testatrix in 1900.

A statement made by Mr. Carley, her attorney and agent, of a large number of items of personal property.

Another statement made by Mr. Carley, showing money received from her husband, which is $55,000 less than is in Exhibit B.

Memorandum by testatrix of bank balance on June 12, 1900.

Memorandum by testatrix of deposit in bank June 30, 1900.

Memorandum by testatrix of deposit in bank July 19, 1900.

Memoranda by testatrix of money in house.

Memorandum by testatrix of receipts of money in 1899.

Memorandum by testatrix of moneys received in 1900, and comparison of income for 1900 with 1899, showing a difference, $375.07.

Statement by Carley of moneys received and noticed in last-named memorandum.

Exhibit A seems to be a careful monthly statement in the handwriting of Mrs. Harper, showing moneys received for the year 1900. Except the note of her sister Julia, everything in the diary is, as I understand, mentioned in Carley's statement, Exhibit B, and everything in the statement is mentioned in the cash account, except the Britt mortgages on Conselyea street, $1,731.14 and $146.69. The court seems to have admitted memoranda of testatrix, Exhibits D to K, both inclusive, only to show a system of bookkeeping. When there is found in a decedent's last residence her writing that in terms shows her receipts, it is admissible for all purposes; and as it is in evidence it may be so used, although not essential to prove the issue. It shows that her total income for the two years was nearly the same, and that she refers to Carley's statement, which is Exhibit L. So we have the memorandum for 1900, corresponding so closely with Carley's statement of her personal property, the cash account of 1899, the summary of receipts for 1900, and comparison with 1899, and Carley's statement for 1900. Nothing else has been found to indicate other or further ownership of personal property, except the slip showing money in the house and in the bank, which last, under date of June 12, 1900, is evidence of her balance in the bank, $2,687.32, and a balance on April 2, 1900, of $4,349.66.

The will was executed on July 21, 1900. The court did not think that her memorandums that she had money in the bank proved that she had. It did not as against the bank, but it did show what her record was, and by Exhibits E and F it appears that $1,382.21 was later deposited before the will was made. The books of the First National Bank of Hempstead show her undrawn balance $3,392.96 on June 12, 1900, and on July 21st (date of will) $3,145.26. The books of the Brooklyn Trust Company show a uniform balance between January and July 21, 1900, of $1,944.51. It is inferable that in Exhibit D she was referring to her deposits in the Hempstead bank, where alone at the time her drawing account was active. The court has found that she had at the date of the will the combined balances, as they appear on the books of both banks, $5,089.77. The court had also found that she had gold and currency in her house of about $1,800. This is based on memorandums in her hand, which show $1,898.85. After her death there was found cash in house $2,390.30, and deposits only in the Brooklyn Trust Company and the First National Bank, Hempstead.

The documents in the decedent's possession, above considered, definitely show particularized securities and money and deposits, and I do not find a fact suggesting that she had more. Of course, she may have had more. She may, as suggested, have had investments that paid nothing for the years 1899 and 1900. But, if so, the record of Carley does not show them. It might not do so. Later history does not expose them. They might, indeed, escape detection. But courts decide on probabilities, and it is not probable that so large a sum as would be necessary to make good the payment of the legacies, debts, and expenses of administration out of the personalty would so completely escape reference by the deceased or the research of her executors. The record shows that the testatrix knew her own affairs and carefully scrutinized her financial resources and standing. I think that, quite aside from the exhibits, that are said to have been received qualifiedly, it is proven with a reasonable degree of certainty that the testatrix intended to charge the general legacies on the land not specifically devised.

[6] The appellants urge that the court had no power to make allowances to the defendants. I think that, in view of the decision in Allen v. Stevens, 161 N. Y. 122, 55 N. E. 568, the objection is not tenable. Section 3252 of the Code of Civil Procedure authorizes an allowance to the plaintiff in an action "to procure an adjudication upon a will or other instrument in writing." Similar words do not appear in section 3253, although, after specifying an action brought to foreclose a mortgage upon real property or for the partition thereof, it is said:

"Or in a difficult and extraordinary case where a defense has been interposed in an action."

Because of the varying phraseology, it has been decided that an allowance could not be made under section 3253 in Hafner v. Hafner, 34 Misc. Rep. 99, 69 N. Y. Supp. 460, and Walter v. Walter, 60 Misc. Rep. 383, 113 N. Y. Supp. 465, affirmed 133 App. Div. 893, 118 N. Y.

Supp. 268. Reliance was placed upon Savage v. Sherman, 87 N. Y. 277, 284–285, which was an action for the construction of a will. In that case an allowance was made, not only to the counsel for the trustee, but to each of the counsel representing other parties, and the court said:

"We can find no ground upon which the allowances to parties other than the trustee can be sustained. We are not referred to any statute, or to any authority sanctioning such allowances."

This decision was in January, 1882. In Matter of Holden, 126 N. Y. 589, 27 N. E. 1063, Savage v. Sherman, supra, is cited as authority that the power to grant allowances must be founded on the Code of Civil Procedure, and that a court of equity has no inherent power to make them. Downing v. Marshall, 37 N. Y. 380, was also cited. In Brown v. Brown, 41 N. Y. 507, the question was whether the costs should be paid in reduction of the income of the widow, or out of the reversionary interest.

Allen v. Stevens, supra, was brought for construction of the will. At the trial there seems to have been no objection to allowances of costs payable out of the estate. The question of power was discussed in the Appellate Division, but was decided more definitely in the Court of Appeals, where it was said:

"The Supreme Court had the power in this suit, brought as it was on the equity side of the court, to award costs to each of the parties, and the question of amount also was in the discretion of that court, and not subject to review here, so long as the allowances did not exceed the limitations provided by statute, and this they did not do."

The question was raised explicitly in several of the briefs. The counsel for the trustees opposed and discussed the allowances to certain defendants, with references to the Code of Civil Procedure (sections 3252–3254), and to decisions, amongst others Downing v. Marshall, supra, and Matter of Holden, supra. The brief for the Attorney General treats of the matter more especially as to the allowance to him. The counsel for the plaintiff defended the allowance to plaintiff, upon the ground, among others, that the case was difficult and extraordinary within section 3253 of the Code of Civil Procedure, and still another party to the appeal discussed the question. The matter was manifestly before the court. I do not attempt to reconcile the decision with former holdings, but follow the later view. The appellants limit their objection to the findings to the power of the court to make them.

The other errors suggested by the appellants do not require discussion. If Mr. Carley's testimony in any part may be deemed inadmissible, it may be disregarded without affecting the findings. The seventh conclusion of law may be misunderstood. The $5,100 therein mentioned should be distributed to all the general legatees, and the finding amended accordingly. The fifty-sixth finding of fact is not approved, but the result is immaterial, as parcel F passed under the devise of the residence of the testatrix.

The judgment should be modified, to conform to the amended findings, and, as so modified, affirmed, with costs to each group of respondents.

Settle order before Mr. Justice THOMAS.

JENKS, P. J., and CARR and RICH, JJ., concur. BURR, J., reads for reversal as to a part of said judgment.

BURR, J. I dissent from so much of the prevailing opinion as holds that the general legacies are a charge upon the residuary real estate. The evidence as to the circumstances of the testator when the will was made, the lack of clear evidence that she at that time knew the exact amount of her personal estate, the long period that elapsed between the execution of the will and her death, and the rather small discrepancy between the legacies and the amount of the personalty as it was found to exist at the former date, is insufficient to sustain a finding of intention so to charge such legacies. Neither do I think that, considering the lapse of time between the date of the will and the date of testator's death, the fact that the will contained a power of sale which might have been included therein as a matter of precaution in case of subsequently accruing indebtedness is sufficient to sustain such finding.

I further dissent upon the ground that, where there are general legacies in a will, a specific devise and a general residuary clause disposing of both the real and personal estate, a purchaser from a devisee is not required, at his peril, to determine as to the existence of sufficient personal property to pay the legacies under the circumstances here disclosed. This decision may tend to disturb many generally accepted titles.