# THE
# MISCELLANEOUS REPORTS
### OF THE
## STATE OF NEW YORK
#### COMMENCING NOVEMBER, 1921.

In the Matter of the Construction of the Last Will and Testament of CHARITY C. MOULD, Deceased.

(Surrogate's Court, Westchester County, November, 1921.)

Wills — construction of — when general legacies will not be charged against real estate — relationship of parent and child as to residuary devisee outweighs any intent which might be inferred by reason of a power of sale.

An intention to charge real estate with the payment of legacies will not be inferred if decedent may have been mistaken in her judgment as to the value of her property or was in reasonable expectancy of increasing her personal estate before her death.

The primary fund for the payment of general legacies is the personal estate unless the will expressly declares otherwise, or a clear intention to the contrary is to be gathered therefrom, which may be aided by extrinsic evidence; if the contrary intention is not expressed in the will, then it must be clearly and satisfactorily inferred.

An intention to charge the real estate of a testatrix will not be inferred from a disparity between the amount of the estate and the legacies, if the testatrix might have been unconscious of its existence, or mistaken in her judgment.

As between a power of sale in a will being a basis for a charge of legacies upon the real estate and the existence of the relationship of parent and child as showing an intention not to create such a charge, the latter is of controlling importance and an outweighing factor on the question of the intent of the testatrix.

Decedent, most of whose property was acquired under the will of her late husband, died at the age of seventy-six years,

**1**

leaving her surviving no children of her body or descendants of any such.   After certain general legacies, amounting to $40,500, not specifically charged upon her real estate, to her sister, nieces and nephews and to relatives of her deceased husband, all the rest, residue and remainder of her estate, both real and personal, was devised and bequeathed to "Florence A. Coombs, who grew up as a child in my family and lived with me for many years, the same to have and to hold forever," and the executor was given full power of sale over the real estate.   When the will was executed, about fifteen months before the death of testatrix, exclusive of 20,000 shares of the United States Tin Company of the par value of one dollar per share, and certain mining stock which had not been transferred from her husband's name, the personal estate of testatrix amounted to about $25,000.   Without testimony as to the intention of testatrix it was stipulated by all parties in interest that both at the date of the will and also at the date of the death of testatrix, the stock in both corporations had no value.   The residuary legatee was a second cousin of testatrix, and from the time she was two years old stood in the mutually acknowledged relationship of parent and child to both the testatrix and her husband, was educated by them at private schools and at her marriage at the home of decedent was given a large wedding.   Certain of the other legatees, relatives of decedent's husband, also lived with her for a while but not in the relationship of parent and child.   *Held,* that the burden of proof resting upon the general legatees to show that it was the intent of testatrix to charge their legacies upon her real estate, had not been sustained, and it is accordingly decreed that said legacies are not a charge upon the real estate left by decedent.

APPLICATION for the construction of a will.

C. Bertram Plante (George H. Taylor, Jr., of counsel), for Florence A. Coombs.

Thomas J. Towers, for executor.

Frederick F. Close, special guardian.

SLATER, S. This is an application for the construction of the will of Charity C. Mould, deceased, made

Misc.]    Surrogate's Court, Westchester County, November, 1921.

by the executor. The question involved is whether the legacies given by the said will are a charge on the real estate of which the testatrix died seized. Charity C. Mould died May 22, 1920, aged about seventy-six years, without leaving children of her body, or their descendants. The will was executed February 5, 1919. She was the widow of Horatio D. Mould, who died May 2, 1899. It appears that most of her property was acquired under the will of her late husband. The will in question first directs the payment of all the debts, funeral expenses, and expense of administration. It then gives general legacies to a sister, nieces and nephews of decedent, and to relatives of her late husband, amounting in all to about $40,500. They are not specifically charged upon the real estate. By the 9th clause, the following gift is made in these words: "All the rest, residue and remainder of my estate, both real and personal, of whatsoever nature and kind, including my lot in Greenwood Cemetery, I give, devise and bequeathe to Florence A. Coombs who grew up as a child in my family and lived with me for many years, the same to have and to hold forever."·

The 10th clause gives to the executor full power and authority to grant and sell and convey all, or any part of the real estate, with full power to execute and deliver all deeds.

The entire estate, real and personal, consists of approximately $40,000 in live assets, divided as follows: personal estate, about $20,000, consisting of money in bank, stocks, bonds, mortgages and jewelry; and equity in real estate, about $20,000 not specifically devised. She had among her securities at the date of the will 20,000 shares of the stock of the United States Tin Company of the par value of one dollar per share, and 200 shares of the stock of the Spenazuna Gold Mining Company. These stocks were found in the

Surrogate's Court, Westchester County, November, 1921.    [Vol. 117.

decedent's strong box, with the jewelry. The mining stock, however, had not been transferred from the husband's name. A formal indorsement is not necessary. *Orton* v. *Tannebaum,* 194 App. Div. 214, 223.

It appears that at the date of the will the personal estate, exclusive of the above-mentioned shares of stock, amounted to about $25,000. It has been stipulated by the parties hereto that there was at the date of the will, and also at date of death, no value to the shares of stock of the United States Tin Company and the mining company. But no one can stipulate the decedent's intention; nor as to what the decedent may have thought these shares of stock added to her estate. No testimony was adduced upon this point. An intention to charge real estate will not be inferred, if decedent may have been mistaken in her judgment as to the value of her property, or in reasonable expectancy of increasing her personal estate before her death. *Carley* v. *Harper,* 219 N. Y. 295.

Florence A. Coombs, the residuary legatee, was a second cousin of the decedent and stood in the mutually acknowledged relationship of parent and child to both the decedent and her husband from the time Mrs. Coombs was two years of age. It is also true that certain legatees, relatives of decedent's husband, lived with her for a while, but not in the relationship of parent and child.

It is well settled that the primary fund for the payment of general legacies is the personal estate, unless express direction is otherwise found in the will, or there be clear intention to the contrary to be gathered from the provisions of the will which may be assisted by extraneous evidence. *McCorn* v. *McCorn,* 100 N. Y. 511; *Lediger* v. *Canfield,* 78 App. Div. 596; *McGoldrick* v. *Bodkin,* 140 id. 196.

The whole question is one of intent, to be searched

for in the light of adjudged cases, but to be determined after all from the language of the will and the circumstances surrounding the testator. *Wiltsie* v. *Shaw,* 100 N. Y. 191; *Carley* v. *Harper,* 219 id. 295.

If the intention is not expressed in the will, then it must be clearly and satisfactorily inferred. *Lupton* v. *Lupton,* 2 Johns. Ch. 614; *Lediger* v. *Canfield, supra.* As is the case with all questions of intention, no precedents are absolutely controlling in other cases, for all differ.

The testimony in the instant case was to the effect that the testatrix was childless, that in 1880 Florence A. Coombs, a second cousin, a blood relative, an orphan, the residuary legatee and devisee, was taken into the family at the age of about two years. She grew up as a child of the testatrix and her husband, and was subject to their control. In return the decedent received filial attention and service. The will referred to her in this manner: " Florence A. Coombs who grew up as a child in my family and lived with me for many years.'' Mr. and Mrs. Mould maintained and educated her at private schools. She was introduced as the daughter, was married at the home of the decedent, and was given a large wedding. Testatrix treated her as her child, and was responsible for her support. The relationship of affection continued to the time of her death. By reason of such facts the legatee sustained to the decedent the relation of a child. *Matter of Beach,* 154 N. Y. 242; *Matter of Davis,* 184 id. 299; *Matter of Lloyd,* 166 App. Div. 1; *Matter of Downey,* 182 N. Y. Supp. 223; *Matter of Chambers,* 112 Misc. Rep. 551; *Matter of Wheeler,* 1 id. 450.

An intention to charge the land will not be inferred from a disparity between the amount of the estate and the legacies, if the testatrix might have been uncon-

Surrogate's Court, Westchester County, November, 1921.    [Vol. **117.**

scious of its existence, or mistaken in her judgment. *Briggs* v. *Carroll,* 117 N. Y. 288, 292.

The testimony did not disclose that the testatrix knew, or comprehended, or believed that her personal estate was insufficient to pay the legacies. On this point, the court has failed to be illuminated. Therefore, we cannot now conjecture.

The mere fact of giving legacies only imputes a general purpose that legacies given shall be paid and amounts to little, when the residue of the estate given is a substantial vital gift to persons by nature the objects of the bounty of the testatrix.

The residuary clause gives the balance of the estate *" both real and personal "* to Mrs. Coombs. If the testatrix knew, or realized, or comprehended that her personal estate was, or would be insufficient to pay the general legacies, what did she mean when she gave in the residuary clause, " the rest, residue and remainder " of her " *personal* estate? " If she understood that there would be no personal estate to pass to Mrs. Coombs, and intended the real estate to be sold to assist in the payment of the general legacies, she must be charged with executing a mocking and a meaningless will to this extent, which upon its face gave something to one near and dear to her. Is it not apparent that she thought, and in fact intended, that after the legacies were paid she would have personal estate left, this to pass under the residuary clause to the child? The very words of gift of the " personal " estate in the residuary clause negative any intention that may be claimed for her that she meant to have the real estate sold to pay the general legacies. It fortifies and makes her intention clear that she really intended Mrs. Coombs to have the real estate, plus the personal estate that she thought would be left after the payment of the general legacies.

The courts have gathered from the presence of a power of sale of real estate otherwise unnecessary, and the blending of real and personal property in the residuary clause, as sometimes helpful to the general legatees in the light of the circumstances. The value of the latter clause is slight. *Carley* v. *Harper,* 166 App. Div. 473, 478; affd., 219 N. Y. 295. These are circumstances merely, and each will must be considered by itself in its entirety. *Matter of City of Rochester,* 110 N. Y. 159. If the will is drawn by a competent lawyer, the failure expressly to charge the legacies upon real estate should be, but perhaps is not, as significant a circumstance as any. *Carley* v. *Harper, supra.* It appears that a competent attorney drew the will of the decedent.

In solving similar problems, the relationship of the beneficiaries has been of most vital concern to the courts. Let us analyze the cases to find the reasoning which led to the opinion of the courts. The two major reasons pervading all the cases are the existence of a power of sale in the will, and the fact of the general legacies or residuary gifts being to persons of the blood, or to those who have stood in the mutually acknowledged relationship of parent and child. In *Taylor* v. *Dodd,* 58 N. Y. 335, the will contained a power of sale. The question of kindred, or parental duty did not enter into the case. The real estate was charged. In *Kalbfleisch* v. *Kalbfleisch,* 67 N. Y. 354, the will contained a power of sale and the testatrix owed a parental duty to the general legatees. The real estate was charged. In *Hoyt* v. *Hoyt,* 85 N. Y. 142, the will contained a power of sale, and there were kindred of the blood as general legatees, as well as residuary legatees. The real estate was charged. In *Scott* v. *Stebbins,* 91 N. Y. 605, the will contained a power of sale and the general legatee was the son. The real

Surrogate's Court, Westchester County, November, 1921.  [Vol. 117.

estate was charged. Thus, in those cases which based the charge upon the existence of a power of sale, the general legatees in whose favor the charge was made were always of the kindred, and those who had done faithful service and kindness to the decedent.

I find no case, however, creating a charge on real estate, based on the ground of a power of sale contained in the will, where the *residuary legatee was of the blood, or who stood in the relationship of parent and child.* This is not to be overlooked. Thus, the instant case contains a new state of facts, upon which the courts have not ruled. In *Bevan* v. *Cooper,* 72 N. Y. 317, and *Brill* v. *Wright,* 112 id. 129, the court held that the legacies were not a charge, the residuary legatees being of the kindred of the testator. The wills, however, did not contain a power of sale. The significant fact is disclosed that (1) in every case where the charge is made the *general legatees* were of the kindred of the blood; and (2) in every case where the charge is not made the *residuary legatees* were of the kindred of the blood. In the former category are included the cases of *Kalbfleisch* v. *Kalbfleisch, supra; Scott* v. *Stebbins, supra; McCorn* v. *McCorn,* 100 N. Y. 511; *Briggs* v. *Carroll,* 117 id. 288. In the latter category are included the cases of *Bevan* v. *Cooper, supra,* and *Brill* v. *Wright, supra.*

With relation to intent, in *Scott* v. *Stebbins,* 91 N. Y. 605, the court said, referring to *Lupton* v. *Lupton,* 2 Johns. Ch. 614: " In that case the *residuary devisees were the children* of the testator, and the legatees were his grandchildren, a fact which might, and no doubt did, have a controlling effect upon the mind of the testator and upon his intention *not to make the real estate chargeable with the legacies.* \* \* \* There is a marked distinction between that case and the one at bar. The *legatee* here was one of the *tes-*

*tator's sons,* and the devises to him and to the other son in connection with the amount of the legacy to each and the reason given for fixing the same evinces an intention to make both equal.  *  *  * it raises the presumption that the testator designed the real estate should be made chargeable with the payment of the legacies.''

In *Bevan* v. *Cooper,* 72 N. Y. 317, where the gifts were to the wife and children of testator and were contained in the residuary clause, the court said in refusing to charge the general legacies upon the land: '' It is of much moment, too, that the residuary clause provides for those who had a claim upon his forethought — his widow and his children — while the legacies sought to be charged are to strangers to his own blood, and having no claim upon him, unless it be that of  *  *  * relationship to a first wife.  *  *  * We should be slow to infer, that a testator meant to prefer legatees standing in such a position to him and to his property, to his widow and to his and her children.''

In *Brill* v. *Wright,* 112 N. Y. 129, 135, the court said: '' The legatee was of kindred to the testator, and the residuary devisees and legatees were strangers in blood. *But they became members of his family when they were children, and lived with him until his death, one for the period of twenty, and the other for twenty-five years.''* The court held that the general legacies were *not* a charge upon the real estate. In *McGoldrick* v. *Bodkin,* 140 App. Div. 196, 199, Justice Carr said: '' Running throughout many of these cases we find at times a strong tendency upon the part of courts to charge the legacy upon the lands in favor of legatees who were of the blood of the testator and thus presumed to be '' the natural objects of his bounty,'' *and*

Surrogate's Court, Westchester County, November, 1921.   [Vol. 117.

*we find this tendency* to be less strong in cases of legatees who were strangers in blood.''

In *Harvey* v. *Kennedy,* 81 App. Div. 261, the legacies were to sisters, the residuary estate passed to the daughter, and the court refused to charge the legacies on the real estate.

In *Wellbrook* v. *Otten,* 35 Misc. Rep. 459, Justice Russell said, referring to the testator: '' His union with Mrs. Hulseberg had proved childless and neither had any descendants. He had taken the plaintiff when but a few months old and reared her as he would a daughter, both he and his wife giving her the appellation of adopted daughter. She stood to both of them as a child, and had no other home than theirs, until she was married. Apart from his wife there was no one so close to him in the tender ties of daily companionship and deliberately assumed fathership. He took no steps to legally adopt the plaintiff, doubtless knowing that he meant to provide for her by testament. There seems to have been no interruption in his loving regard for the plaintiff.'' This last statement might very well be made in the instant case, covering the relationship which existed between the decedent and the adopted daughter. Justice Russell in this case held that the gift of the legacy to the adopted daughter was a charge upon the real estate, and said: '' The extrinsic situation, therefore, both as to condition of his property, his wife's property and the claims of those properly and in fact the natural recipients of his bounty, which was present in the mind of the testator in making the will and the codicil, *renders as certain as the evidence of circumstances can afford, the presumption that the testator meant that when his wife died this daughter and brother should receive the full benefits he had planned to give them.''*

In *Carley* v. *Harper, supra,* the court said that the

relation of the beneficiaries of the will to the testator is not to be overlooked and the presumption favors children rather than strangers.

In *Matter of Noe,* 94 Misc. Rep. 63, Surrogate Fowler reflected this same thought when he said: " She had no immediate relatives who would be the natural objects of her bounty; there was no one dependent upon her whom she would be under an obligation to support. Her legatees were personal friends, charitable or religious corporations and persons remotely related to her. There would therefore be no controlling reason for the discrimination in favor of the residuary legatees which a construction limiting the payment of the pecuniary legacies to the personal estate would necessarily imply * * *. Neither of the residuary legatees was the natural object of her bounty; one was a corporation, the other merely a friend. There is nothing in the will which would indicate an intention on the part of the testatrix to prefer these legatees to the thirty other legatees to whom she had bequeathed various sums, and there is no reason extrinsic of the will which would justify or explain such a preference."

Likewise, Surrogate Foley, in *Matter of Obst,* 115 Misc. Rep. 711, holds that the courts will take note of the relationship of a legatee as a controlling factor, when he said: " The legacy of the income on $3,000 in trust for the benefit of Marietta Kerns, the widow of the deceased son of the testatrix, is a specific legacy. *Matter of Matthews,* 122 App. Div. 605. It also partakes of the nature of a demonstrative legacy, being payable out of a specified fund. *Crawford* v. *McCarthy,* 159 N. Y. 514. In either case it is entitled to a preference. The daughter-in-law resided with the testatrix, and appears to have been a special object of her bounty. No other provision was made for her.

The codicil contains a clear and unequivocal expression of the testatrix's intention to prefer this legacy to the widow of her son over any of the others. *Matter of Lloyd,* 166 App. Div. 1. This legacy should therefore be paid in full.''

Also Justice Clarke in *Bly* v. *Bly,* 163 App. Div. 320, 333, said: '' No natural objects of the testator's bounty, widow, children, or descendants, clamor to us to mark this venerable and public-spirited man as enacting a practical joke at the edge of his grave.'' The case of *Richardson* v. *Richardson,* 145 App. Div. 540, Justice Rich writing, also affirms the same principle. Surrogate Schulz, in *Matter of Gaffney,* 109 Misc. Rep. 397, declined to hold that the devise of real estate given to the daughter should in any manner be cut down.

Thus, the major reason created by blood and relationship existing for many years, as parent and child, is a powerful reason, whether such person be a general legatee, or a residuary legatee.

The cases of *Carley* v. *Harper, supra,* and *Ely* v. *Megie,* 219 N. Y. 112, may well be distinguished from the instant case. In the former case the will contained a direction to pay the transfer tax from the residue, suggesting that the legacies should be paid in full. Also in the *Carley* case the trial court found that when she made her will, the testatrix knew or believed she possessed a certain amount of personal property. That has not been shown in the instant case. The relationship of the beneficiaries to the testator did not exist in *Ely* v. *Megie, supra.* In *Carley* v. *Harper, supra,* relatives of the blood took as general legatees, as well as residuary legatees. The question of disinheriting, or discriminating against a child was not involved in either of these cases.

It was stated by Judge Hogan in *Ely* v. *Megie, supra,*

Misc.] Surrogate's Court, Westchester County, November, 1921.

that a gift to legatees would indeed be a "mockery and an absurdity" with an inadequate fund from which to pay the legacies. In the instant case then, we certainly have a double mockery. If the real estate is charged with the payment of the general legacies, it would result in causing the gift to the child to be valueless, and the words of gift of the testatrix " nugatory and unavailing." She would receive nothing, " less than equity suggests as her share." It is very noticeable that in all the cases dealing with the subject a preference is given to relatives of the blood, and particularly to persons who stand in the relation of parent and child, rather than to strangers, relatives of less degree, or to charitable corporations. Where those standing in these positions to the decedent are the residuary devisees, the courts have consistently refused to charge their gifts with the payment of the general legacies. Seemingly, the courts are slow to infer a preference against those standing in this relationship. Where this class are named as general legatees, then the courts have consistently held that such gifts are a charge upon the real estate. This distinction is expressive. The courts have struggled to find a reason for holding in favor of a child. *Lupton* v. *Lupton, supra; Taylor* v. *Dodd,* 58 N. Y. 335; *Kalbfleisch* v. *Kalbfleisch,* 67 id. 354; *Bevan* v. *Cooper,* 72 id. 317; *Hoyt* v. *Hoyt,* 85 id. 142; *Scott* v. *Stebbins,* 91 id. 605; *McCorn* v. *McCorn, supra; Brill* v. *Wright,* 112 N. Y. 129; *Briggs* v. *Carroll,* 117 id. 288; *Morris* v. *Sickly,* 133 id. 456; *Irwin* v. *Teller,* 188 id. 25; *Carley* v. *Harper, supra; Ely* v. *Megie, supra; McGoldrick* v. *Bodkin,* 140 App. Div. 196; *Lediger* v. *Canfield,* 78 id. 596; *Wellbrook* v. *Otten,* 35 Misc. Rep. 459.

It would appear that persons of the blood and those who stand in the position of parent and child, and persons dependent upon the deceased are preferred by

Surrogate's Court, Westchester County, November, 1921.   [Vol. 117.

the court because they do not come within the general rule of "mere bounty." To my mind it is a material circumstance, far outweighing any other, in considering the general intent of the testatrix, that the residuary legatee stood in the mutually acknowledged relationship of parent and child. Such a preference is acknowledged in the Transfer Tax Law, Laws of 1909, chapter 62, section 221A. There is, too, the canon of construction that where there are two equally probable interpretations of the language of a will, that one is to be adopted which prefers the kin of a testator to strangers, and, in doubtful cases, the courts will favor those dependent upon a person's natural bounty. The circumstances relating to the life of Mrs. Coombs, her bringing up, her education, her marriage, in fact her status in the family life, are all circumstances most material in differentiating the gift to her from the class of "mere bounty." Mrs. Coombs was the only person who sustained to the decedent in her lifetime the relation of a child. She became in tender years the object of the testatrix's solicitude and providing care. She was practically adopted by her. *Matter of Chambers,* 112 Misc. Rep. 551. The child was dependent upon her. When a child is adopted from its own natural environments into the home, a burden is assumed. Most people pour out to such a child a generous supply of love and affection, sometimes far exceeding what would naturally flow to one's own natural offspring. The extra care, devotion and love is evidence of a desire to cause the child to be bettered by the change of home conditions. I cannot think that Charity C. Mould ever intended to mock this child with a valueless bequest, giving her only "my lot in Greenwood Cemetery," in later years to house her body. The design on the part of the testatrix to have the legatee first die, before the realization of the

Misc.] Surrogate's Court, Westchester County, November, 1921.

inheritance, would be a monumental farce. From the evidence adduced she was not a woman who could, or would knowingly do this. To her the position she held toward this child had been and was sacred. She would not have seared her soul upon the edge of the grave with so cruel a fraud. She never intended to indulge in a bequest to her, both useless and vain. It not only would be shallow, but contemptible. The residuary clause contains the only provision for this adopted child. It cannot be treated as a cautious final provision to guard against intestacy. It is of much moment that the residuary clause provides for one who had a claim upon her forethought. Probably the testatrix never conceived of the situation which now presents the real difficulty. The will has every appearance of an intention to have something left for Mrs. Coombs, because the testatrix then believed her fortune large enough for all her testamentary purposes. In order to hold that the legacies were charged upon the real estate, it must appear that the question did present itself to the testatrix, and that she intended that they should be so charged. Whether or not Mrs. Mould knew that the personal estate was insufficient to pay the legacies, this court cannot say, the testimony upon this point was very meagre — but it can say that from all the surrounding circumstances is revealed the intention not to make a thimble-rig bequest to an adopted child and a gift throughout false, artificial and valueless. The gift was not made entirely from good will, but from a sense of parental obligation. This intent would fail in this case if the legacies were charged upon the real estate.

To sum up: In the instant case we have the basis for a decision in favor of the legatees; the power of sale, and the blending of the real and personal property in the residuary clause. In favor of the residuary

legatee, we have the will being drawn by a competent attorney, and the relationship existing between the decedent and the child. Which is the paramount reason for sustaining the testatrix's intention in the instant case? It has been said that "The paramount desideratum in every case on wills should be an equitable determination."

The two principal reasons which courts have used in arriving at the intention of testators, are in the instant case on opposing sides. It cannot be well said that the power of sale expresses the full intention of the decedent in the absence of expressed direction, and that it can be "fairly or satisfactorily inferred" or is "clear" or is "clearly inferred" or is "clear and manifest." *Lediger* v. *Canfield,* 78 App. Div. 596. Judge Thomas, in *Carley* v. *Harper,* 166 App. Div. 473, 478, regarding the weight to be given a power of sale clause, says: "And yet, such an authority is so commonly a conventional part of a will that its influence may be inconsiderable. The same is true of the mention of real estate and personalty in the residuary clause." In *Matter of Lummis,* 101 Misc. Rep. 258, 270, Surrogate Fowler in speaking of the situation of the rule at the present time, with reference to *Carley* v. *Harper, supra,* says: "The blending * * * of a power of sale and the direction to pay inheritance taxes out of the residuary estate, while worthy of consideration, are never absolutely controlling in determining charges on land. Those circumstances are frequently referred to in the opinions of appellate courts, but the dominating factor has always been the amount of personalty on hand at the time the will was executed. In the case now before the surrogate the usual argument is predicated of the existence of a power of sale, the blending of the realty and personalty in the residuary clause and the direction to pay

Misc.]    Surrogate's Court, Westchester County, November, 1921.

the inheritance taxes.   The contrary argument, in favor of the contention of the widow, is just as strong, based upon these same premises.   A power of sale is often put in a will because the precedents will have it so and because such a power may in some way at times prove valuable.   The express direction to pay the taxes out of the residuary estate may be regarded as an indication that the legacies themselves were not so payable, especially where the will was drawn by an attorney.   The blending of realty and personalty in a residuary clause was stated in *Brill* v. *Wright, supra,* of itself not to be a dominant consideration.   *Irwin* v. *Teller,* 188 N. Y. 25.''

The one fact alone, the relationship in blood, and standing in the mutually acknowledged relationship of parent and child is enough to tip the scale in favor of the residuary legatee in the instant case.   By the very compelling nature of the reasoning in favor of those who have from infancy maintained the mutually acknowledged relationship of parent and child, the court feels that it must hold for the residuary legatee. Every intendment is in favor of the adopted daughter, the natural object of the testatrix's bounty.   In my opinion, the burden has not been sustained by the general legatees to show the intent of the testatrix to charge the general legacies upon the real estate.   In weighing all the reasons for and against the contention to charge the real estate, I find the circumstances of kindred, living in the relationship of parent and child, and the life of Mrs. Coombs to far outweigh all other circumstances found in this case.   As between a power of sale in a will being a basis for a charge of legacies upon real estate, and the existence of the relationship of parent and child, showing an intendment not to create such a charge, I shall hold the latter as of controlling importance and the outweighing factor on the question of the intent of the testatrix.

2

Surrogate's Court, Westchester County, November, 1921.   [Vol. 117.

" So with cases of wills where the testator fails to state what should be the legal consequences of the instrument, in certain contingencies, a court of construction may place itself in his position and read as a portion of the will what the language requires. The court then merely attributes to the testator the effect which, placing itself in his position when he made the will, it can see he must have intended," says Surrogate Fowler in *Matter of Lummis, supra.* In the instant case, placing the court in the testatrix's position, with the rules of law to guide, as the court understands and applies them, I decide that the general legacies in the will are not a charge upon the real estate left by the decedent. This intent I attribute to Charity C. Mould. This I think should be the true solution of the difficulty in the light of reason, precedent, equity and humanity.

Decreed accordingly.